(126 So. 228)

No. 30273.

**DAILY STATES PUB. CO., Limited, v. UHALT.**

Jan. 6, 1930.

Rehearing Denied Feb. 3, 1930.

Dart & Dart, Robert Ewing, Jr., and Leo L. Dubourg, all of New Orleans, for appellant.

A. D. Danziger, Albert B. Koorie, and P. H. Stern, all of New Orleans, for appellee.

OVERTON, J. This is a suit, the purpose of which is to obtain specific performance of a contract by enjoining its breach.

After a hearing had on the rule to show cause why the preliminary injunction should not issue, the trial judge dissolved the temporary restraining order he had granted, and refused to issue the injunction requested. It is from the order refusing to issue the preliminary injunction that the case is now before us.

The contract, whose breach it is sought to enjoin, is dated June 2, 1928, and reads as follows:

"This agreement this day entered into between Joseph H. Uhalt, of age and a resident of New Orleans, Louisiana, party of the first part, and Daily States Publishing Company, a Louisiana corporation, domiciled in New Orleans, herein represented by Robert Ewing, its president, party of the second part, witnesseth.

"In consideration of the party of the second part devoting news space in the daily newspaper published by it, known as the New Orleans States, for publicity of the radio station, operated by party of the second part, and of giving space in said newspaper to news, stories, programs, pictures, etc., all of which the said party of the second part binds and obligates itself to do, party of the first part agrees as follows:

"1. Not to permit any other newspaper, publishing house or other advertising agency

to use said radio station for any purpose without written approval of the party of the second part.

"2. To permit the said party of the second part to use said radio station for broadcasting purposes at any time it sees fit, for sport events, exhibitions, shows, and for news purposes, etc., at no cost except for special remote control lines, which latter cost is to be borne by party of the second part. The cost of operating transmitter and station is to be borne by party of the first part.

"This agreement is to be binding upon the parties of the first part and second part, their heirs, executors, administrators and assigns."

On August 1, 1929, which was 14 months after the foregoing contract was entered into, Uhalt wrote plaintiff a letter, terminating the contract, the termination to become effective as of date, August 10, 1929. Shortly after plaintiff received this letter it applied for an injunction to restrain the breach of the contract. The prayer of the petition, so far as relates to the issuance of the preliminary injunction, reads as follows: "That said defendant Joseph H. Uhalt, doing business as Uhalt Broadcasting Company, be ordered to show cause on a date and at an hour to be fixed by this honorable court, why a preliminary injunction should not issue herein, restraining and enjoining and prohibiting said defendant, Joseph H. Uhalt, doing business under the name of Uhalt Broadcasting Company, from interfering with petitioner's use of said radio station WDSU for the purpose of broadcasting at any time it sees fit, sport events, exhibitions, shows and news bulletins, in accordance with the agreement existing between petitioner and defendant, and restraining, enjoining and prohibiting said defendant from permitting any other newspa-

per, publishing house or advertiser from using said radio station WDSU for any purpose without the written approval of petitioner."

In the body of its petition, plaintiff alleges that defendant Uhalt, prior to 1928, had been operating a radio station in New Orleans, known as radio station WCDE, using a power of 250 watts under authority of the Federal Radio Commission; that the defendant Uhalt was desirous of obtaining a permit to use greater power in the operation of his radio station, and for that purpose enlisted the aid of plaintiff to assist him in obtaining the necessary license; that plaintiff used its best efforts to accomplish that end, and was successful in obtaining a license to use 1,000 watts, which was the power desired, the station being designated in the license as WDSU, "W" being the call letter, "D" signifying the De Soto Hotel, where the station is located, "S" signifying the States, the abreviated name of plaintiff, and "U" signifying the name of defendant, Uhalt.

Following these allegations, plaintiff alleges, to quote from its petition: "That at the time of obtaining the said license for increased power, petitioner and the said defendant, Jos. H. Uhalt, entered into a joint adventure for the operation of the proposed station, with the understanding that your petitioner would be permitted to use said station during its entire existence and defendant on the other hand would be given certain publicity for the said station in the newspaper published by petitioner, known as the Daily States." Then follows an allegation, alleging the contract of June 2, 1928, quoted in the foregoing part of this opinion.

On the trial of the rule to show cause why the injunction should not issue, it appeared that some time in 1924 Uhalt opened a broadcasting station in New Orleans, possessing a

power of five watts, and bearing the designation WCDE. Later, Uhalt obtained a permit to construct a 250-watt station, and then conceived the idea of applying for a permit for a 500-watt station. However, he found that, at comparatively little additional expense, he could acquire the outfit necessary for a 1,000-watt station, and concluded to enlist, which he did, the services of plaintiff, through P. K. Ewing, who was in plaintiff's employ at the time. Plaintiff, through Col. Robert Ewing, the publisher of the Daily States, undertook to assist defendant to obtain a permit to operate a 1,000-watt station. Defendant filed application for the permit, but did nothing more, he says, because plaintiff requested him not to take any further steps. After some effort on the part of plaintiff, through Col. Ewing and P. K. Ewing, a license to operate a 1,000-watt station was issued to Uhalt on November 11, 1928, five months after the contract, quoted above, was signed. After the permit to operate the station on a power of 1,000 watts was obtained, plaintiff was instrumental in securing a chain program for the station, and handled, through its employee, P. K. Ewing, most of the details of that connection.

From the time of the issuance of the license until the time this suit was filed, defendant conducted the station under the name of the Uhalt Broadcasting Company. In a letter to the Federal Radio Commission, of date April 4, 1929, defendant said that the Uhalt Broadcasting Company was an unincorporated company, composed of himself, the New Orleans States, and the Hotel De Soto. This does not mean, however, that plaintiff has an interest in the property of the station, or that it shares in the profits and losses. Plaintiff has no such interest and claims none, nor does it share in the profits and losses. The profits go to defendant, and he bears the losses, and finances the station, except the cost of special control lines, which plaintiff bears when it uses those lines.

The station cost defendant $15,000, and the cost of operating it, which defendant bears, is approximately $300 a week. The only expense that plaintiff has had to bear in connection with the station, aside from special control lines, when used by it, and the expense of advertising the station, was the cost, amounting to $350, of preparing a small studio in the building, occupied by it, and the expense, which was small, of leasing a wire from a telephone company, connecting its studio with the main studio.

Plaintiff, in execution of its obligation to advertise the station, published its programs, prepared and published accounts of the station, inserted cuts in its paper advertising it, and, though not in execution of that obligation, even noticed the station editorially. The only complaint that the record discloses, touching the advertising, is that plaintiff stressed its own name too much in connection with the station in some of the accounts published. Plaintiff used the station for broadcasting news items, sports, and other matters. Up to the time that defendant wrote his letter terminating his relations with plaintiff, there was no complaint that plaintiff was using the station excessively. The benefit that plaintiff expected to derive from its contract was publicity, which plaintiff values at approximately $4,000 a year.

One of the several positions taken by defendant as to why the injunction should not issue is that the arrangement between him and plaintiff was terminable by either party on the giving of notice, and, hence, that when he terminated it, he merely exercised a right granted him, and therefore did not breach the contract. Defendant's position rests upon the fact that the contract of June 2, 1928, es-

tablishing the relations between the parties, makes no reference to the period during which those relations shall continue.

██ Plaintiff, though contending that the arrangement, from its nature, is irrevocable as long as defendant continues to operate the station, sought to strengthen its position by showing that, in an agreement in force prior to the present arrangement, it was expressly stipulated that the arrangement was so to continue. This evidence was excluded under objection urged by defendant. We find no error in the ruling. The contract of June 2, 1928, was written to take the place of the prior agreement. It is not alleged that there was error in its confection. When a contract is reduced to writing it supersedes all prior oral arrangements between the parties. 33 C. J. 848. This is also true as to prior informal written memoranda of agreements.

With reference to the right to terminate the arrangement, plaintiff urges that the arrangement constitutes a contract of joint adventure, and therefore, in the absence of any provision to the contrary, is presumed to continue, without the right of revocation, save for cause, until the object of the arrangement is accomplished.

Joint adventure, as a legal concept, is of comparatively recent origin, and is the creature of American courts. 33 C. J. p. 841. The concept has received some recognition in this state. Ludeau v. Avoyelles Cotton Co., Inc., 164 La. 275, 113 So. 846; Doane v. Adams & Co., 15 La. Ann. 350.

██ "A joint adventure has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." 33 C. J. p. 841. A joint adventure has also been defined as "An association of two or more

persons to carry out a single business enterprise for profit." Fletcher v. Fletcher, 206 Mich. 153, 172 N. W. 436, 440. It has been held that a corporation may be a member of a joint adventure, the purposes of which are within its corporate powers. Tusant & Son Co. v. Chas. Weitz Sons, 195 Iowa, 1386, 191 N. W. 884. The relations between joint adventures are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Co., supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure "is that, while a copartnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years."

██ As to the duration of the association: "If no date is fixed by the contract for the termination of the adventure, or its termination is dependent upon the happening of a contingency, the agreement is usually constituted to remain in force until the purpose is accomplished, or the contingency has happened, and neither party can, without just cause, terminate the adventure until that time." 33 C. J. p. 849. However, this is not always the case, for "Where the contract contemplates a series of business ventures, such as buying and selling corporate stocks or bonds, or real estate on speculation, and there is no time limited for the continuance of the enterprise, it is usually held that the contract is terminable at will by any party to it." 33 C. J. p. 849. In fact, it has been held that a joint adventure is subject to the same rules, regarding its duration, as a partnership. Hardin v. Robinson, 178 App. Div. 724, 162 N. Y. S. 531, affirmed by memorandum decision, 223 N. Y. 651, 119 N. E. 1047.

It may be conceded, for the purposes of this case, that the facts herein disclose the formation of a joint adventure. If we so regard the facts, nevertheless it would seem that the arrangement made was one terminable on the giving of notice. It may be perceived readily that an association formed for the accomplishment of a single transaction is intended, from its very nature, to continue until the transaction is accomplished and terminates upon the accomplishment of the transaction. Here, however, the business to be conducted is of a continuing nature, with no end in sight until, for some cause, the operation of the station or the newspaper ceases. Moreover, the relation established involves the performance by each party of a number of obligations, the manner of discharging which may be fruitful of dissatisfaction. In these circumstances it should be held, we think, that the relation established may be terminated on the giving of reasonable notice. Certainly, were the relation here established treated as a partnership, it would be terminable on the giving of reasonable notice, and we see no reason why the rules of law applicable to the duration of partnerships should not be applicable to the duration of the relation of joint adventurers.

If we reject the theory that the relation established by the contract is one of joint adventure, we think that it is nevertheless a contract terminable upon the giving of reasonable notice. Upon the rejection of the theory of a joint adventure, the contract then must be considered as being one sui generis, as it does not fall clearly under any specific classification. From its very nature we think it one terminable upon the giving of reasonable notice. There is nothing strange that, in a contract of the nature of the present one, suggesting uncertainty as to the successful or satisfactory operation of the arrangement, the contract should contemplate its termination upon the giving of reasonable notice.

We have carefully examined the authorities cited by plaintiff, but think that they are not applicable here. Our conclusion is that the contract was terminable upon the giving of reasonable notice, and, therefore, that there is no breach to enjoin.

There is another reason why it was proper not to issue an injunction herein. That reason touches the right to use the writ of injunction to secure specific performance of a contract. Cases arise where it is proper to use the writ of injunction to bring about indirectly the specific performance of a contract, though circumstances are such that specific performance cannot be decreed. Lumley v. Wagner, 1 De Gex M. & G. (English case) 616; Lewis & Spelling on Law of Injunction, § 129. "Where, however, generally speaking, the enforcement of specific performance by the court is impracticable, injunction sought to effectuate specific performance will not be granted; for instance, where a contract by its terms stipulates for a succession of acts whose performance cannot be consummated by one transaction, but will be continuous, and require protracted supervision. Accordingly, it was held an injunction should not be granted to prevent breach of a contract by which a railroad company agreed to furnish an express company, from time to time, requisite conveniences and rooms, and cars and extra trains and assistance of employees where necessary." Lewis & Spelling on Law of Injunctions, § 130. See; also, Iron Age Publishing Co. v. Western Union Telegraph Co., 83 Ala. 493, 3 So. 449, 3 Am. St. Rep. 758; York Haven Water & Power Co. v. York Haven Paper Co. (C. C. A.) 201 F. 270. In the case at bar, the various acts to be performed, under the contract, clearly show that an

injunction should not issue to secure its performance by preventing its breach.

For these reasons, we are unable to say that the trial judge erred in refusing the injunction.

The judgment, appealed from, is affirmed.

O'NIELL, C. J., and LAND, J., dissenting.