STOULIG, Judge.
Plaintiff Elizabeth Roberson and her now deceased husband, Hampton Roberson, filed suit against C. W. Maris and Thomas Grant (an alleged partnership), doing business as Modern Homes; and Joseph Young, Jr., doing business as Garden Homes, for the re *490 turn of $1,020 advanced to the defendants for the construction of a house.
On October 29, 1971, the trial court rendered judgment in favor of plaintiff against defendants Maris and Grant for $1,020 and continued the trial against Joseph Young, Jr. On January 5, 1971, the trial court dismissed plaintiff’s suit against Young, and it is from this judgment plaintiff appeals.
To place the issues raised by this appeal in proper perspective, it is necessary to review the events leading to the execution of the purported contract which forms the basis of this litigation. The facts as can best be adduced from the record are these: On August 23, 1969, the plaintiff and her husband signed a building contract with Modern Homes to construct a Catalina model home on their property in the City of Kenner. The building was to be constructed in accordance with certain plans, specifications, and general details of construction set forth in the agreement for the contract price of $7,250. Appellant made a cash deposit of $970 with Thomas Grant of Modern Homes and several months later paid Modern Homes an additional sum of $50 for the plans and specifications mentioned in the contract.
Apparently, Modern Homes for some unknown cause was unable to undertake the construction of the building, and, for this reason, the defendant C. W. Maris took the plaintiffs to see Young. While the record is silent as to what transpired, as a result of the meeting Young did draft a purported contract with the Robersons to construct a house for $11,000. This contract was dated November 21, 1967, some 90 days after the original contract and deposit with Modern Homes.
It is significant to note that the building contract was drafted by Young on a printed “Agreement to Purchase or Sell” form customarily used in the selling of real estate. This ill-advised attempt by Young to adapt an agreement to sell to fulfill the purpose of a building contract by simply making insertions in the blank spaces of the printed form makes a judicious interpretation of the agreement more difficult and the omissions due to his lack of knowledge of the essential requirements of a building contract only renders the task more perplexing.
An examination of the document reveals the building to be constructed is simply described as:
“ * * * [Ojne certain framed three bedroom bldg, measuring 20 x 36 on owners’ lots 36 & 37 sq. 157 Kenner Proj ect measuring 40 x 120.”
As written, the plaintiffs were obligated to purchase one frame three bedroom house constructed on their own property. Other than that the structure is to be a three bedroom frame building, none of the essential details of the construction, such as the type of roof, plumbing, electrical facilities, or other living accommodations are embodied in the agreement. Nor is reference made to any specific plans or specifications. While the stated consideration of $11,000 is payable $970 in cash and the balance to be financed by first and second mortgages, there are no provisions relative to securing this financing, the amount of monthly amortization, the term, or maximum interest rate. Under the agreement, the act of sale by plaintiffs was to be passed on April 1, 1968, and as noted in the handwriting of Young “purchaser will pay closing cost at act of sale.” Being a standard commercial form, all of the printed provisions of the document are applicable to the sale of realty and therefore not adaptable to govern the obligations of a building contract. This agreement was signed by the Robersons and Young.
Young also failed to begin construction of the dwelling because of his alleged inability to obtain a building permit, though no evidence of this fact was ever offered. Appellant sued for the return of her $970 cash deposit which Young acknowledged has been “pd to Modern Homes.” Since specific performance is not being sought, this obviates the- necessity of passing upon the sufficiency of the agreement except as it *491 relates to the liability of Young for the return of the deposit.
Appellant advances several bases in support of her right to a judgment against Young, the first of which is that the building of plaintiff’s house was a joint venture of the defendants Maris and Young. Her theory is these defendants were jointly seeking a profit through a specific project without any prior legal relationship between them.
These factors alone are insufficient to constitute a joint venture. In addition to a commercial common enterprise by two or more parties formed with the intent to engage in a joint venture,[1] there must also be a sharing of proprietary interest and right of control[2] together with a participation in the losses and profits.[3] The evidence bearing upon the relationship between Maris and Young failed to meet these standards of identity.
Appellant alternatively maintains that according to the printed provisions of the contract, the defendant Young should be cast in judgment for double the deposit. It is conceded that parties may validly contract on all matters and under such terms as may be mutually agreeable, provided it is not prohibited by law or contrary to public policy, and such agreements have the effect of law between parties governing its subject matter. However, the verbiage of the printed form clearly relates to an agreement to sell realty and is not identifiable with a building contract.[4] Any attempt to adopt it as a penalty for the failure to construct a dwelling would be unconscionable particularly in view of the lack of basic general construction information in the contract and the absence of any oral testimony to sustain that the parties contemplated the imposition of such a penalty. Also for further reasons which will be advanced later, we find this contention without merit.
The last assignment of error is that the trial court improperly accepted a modified version [5] as being the true contract between the parties. Unquestionably the contract which Young admitted he altered without the approval and knowledge of the Robersons cannot be considered as evidencing the true agreement between the parties; however, we find no support in the record that the trial judge accepted it as such. This court only recognized the unaltered instrument submitted by appellant as determinative of the contractual rights of the parties.
Appellant’s right to a judgment against Young for the return of her deposit is dependent upon the legal status of Maris in the transaction. If he was acting in a fiduciary capacity, then the party on whose behalf he was acting is charged with the legal consequences flowing from the agent’s actions with the opposite party, absent fraud or collusion.
*492 The trial court based its judgment against Charles W. Maris and Thomas Grant upon the finding that the loss resulted from a “ * * * defalcation of plaintiff’s funds by said defendants while acting in a fiduciary capacity and obtaining same by false representations * * *.” The supplemental judgment dismissing plaintiffs’ action against Young absolved him of any responsibility for the loss suffered by the Robersons. The trial judge further concluded that the $970 deposit was paid to their agents (Maris and Grant) and was never received by Young. There is a sufficient evidentiary basis to warrant these factual conclusions which we find to be free of manifest error and therefore must remain undisturbed.
The record clearly establishes that Modern Homes (C. W. Maris) and Garden Homes (Joseph Young, Jr.) are two separate and distinct operating entities with only one or two prior incidents of business relationships. The deposit with Modern Homes was made in connection with a totally unrelated contract some 90 days before the subject agreement. Mrs. Roberson admitted that no money was paid to Young nor was he ever requested to return the deposit. Though he stipulated in the contract that the $970 had been paid to Modern Homes, Young did not indicate he personally received the funds and always insisted that he dealt with Maris as the agent of the Rober-sons. There is no evidence that the appellant was induced or provoked by the agreement with Young to make the deposit with Maris. The case is a classic example of two parties having entered into a contract, neither of whom is interested in enforcing it, or, stated alternatively, from which both are willing to withdraw. Under such circumstances each party would be obligated to return whatever had been received pursuant to the agreement so that they would be restored to the same condition as existed prior to the execution of the contract. Since there was no actual transfer of property or other consideration passed between these parties, obviously no need exists for any return.
For the foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are to be borne by the appellant.
Affirmed.

. Hero & Company v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650 (1958).

. Hauth v. Iacoponelli, 251 La. 410, 204 So.2d 767 (1907) ; Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341 (1942).

. Walker v. Simmons, 155 So.2d 234 (La.App.3d Cir. 1963).

. “In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.
In the event the seller does not comply with this agreement within the time specified, the purchaser shall have the right either to demand the return of his deposit in full plus an equal amount to be paid as penalty by the seller; or the purchaser may demand specific performance, at his option.”

.Young varied the original agreement, dated November 21, 1967, by interlining the following handwritten statement in the printed provision requiring the $970 deposit : “This sum was received and held by Bill Maris — agent for Hampton Roberson,” and at the bottom of the contract he noted: “Contract given to Bill Maris 10/16/68.”