355 So.2d 625 (1978)
MARINE SERVICES, INC.
v.
A-1 INDUSTRIES, INC.
No. 8850.
Court of Appeal of Louisiana, Fourth Circuit.
February 14, 1978.
Rehearing Denied March 14, 1978.
*626 Jackson & Stovall, James E. Stovall, New Orleans, for plaintiff-appellant.
Albert B. Koorie, New Orleans, for defendant-appellee.
Before LEMMON, STOULIG and GARSAUD, JJ.
GARSAUD, Judge.
Plaintiff-appellant brought this suit for damages for breach of an exclusive agency agreement against defendant, A-1 Industries, Inc. An amended petition was filed after the trial court maintained defendant's exception of vagueness. Subsequently, defendant filed an exception of no cause of action, alleging that the agreement in question was a joint venture agreement between plaintiff and defendant, and accordingly plaintiff's remedy would be first in a suit to dissolve or liquidate the joint venture under partnership law.
After a determination that the agreement was a joint venture, the exception of no cause of action was maintained by the trial judge, thereby dismissing plaintiff's suit. Plaintiff appeals from that dismissal, contending that the agreement was not a joint venture, but rather that the relationship between the parties was that of principal and agent. Defendant has answered the appeal, asking for damages for loss of credit and reputation as well as for prosecution of a frivolous appeal.
The agreement in question is labeled a joint venture by the parties, and its provisions are as follows:
"1. Marine Services and A-1 will mutually agree on any bid proposal before submission to Litton.
"2. All estimates will be based on $4.00 per manhour plus 70% maximum overhead applicable to total direct labor costs. Any reduction in the 70% allocated overhead percentage will be considered to be profit. Any dispute in the actual determined overhead percentage relative to direct labor will be settled by an arbitrator representing a mutually agreed-upon accounting firm.
"3. All estimates will contain a 10% profit figure for A-1 and a 7½% profit figure for Marine Services. All additional profits realized over and above those specifically indicated in each estimate will be divided on the ration [sic] of 10% 7½ or 54.8% for A-1 and 45.2% for Marine Services.
"4. Upon completion of each contract, cost will be ascertained and if any losses are sustained by A-1 in relation to the estimate, these losses will be deducted from any profits any any [sic] remaining profits will be divided 54.8% (A-1) and 45.2% (Marine Services). By the same token, any savings throughout the estimate *627 will be designated as profits and divided similarly.
"5. All payments will be made by Littonon monthly progress payments against percentage of work completed.
"6. Checks received against any contract will be made payable to both companies.
"7. This agreement will remain in force for the Farrell-APL, LHA and 30 Destroyer programs.
"8. A-1 will be responsible for furnishing all necessary facilities, labor, supervision and financing.
"9. Marine Services will furnish supervisor and quality control personnel for the length of all contracts and also will do all estimating, sales, engineering and liaison work."
This agreement was entered into for the purpose of bidding on subcontracting work for Litton Industries. It has been alleged that defendant lacked the good will and business contacts to procure subcontracts from Litton on its own reputation. Thus, under this agreement plaintiff provided the good will, etc., for the procurement of the contracts and defendant would perform the work necessary for the completion of the contracts. After a contract had been bid upon and received from Litton by these parties, plaintiff alleges that defendant bid directly with Litton for future work, which was in violation of the terms of the agreement.
The sole issue presented is whether these provisions constitute and establish a joint venture, as defendant maintains, or an agency relationship, as the plaintiff maintains. There is no dispute between the parties here that if this is a joint venture arrangement then partnership law applies, and the exception of no cause of action was properly maintained.
The parties are correct that joint ventures are governed by the law of partnership. The comparison between a joint venture and a partnership was spelled out in McCann v. Ladd, 203 La. 631, 14 So.2d 469 (1943), quoting from Daily States Publishing Co. v. Uhalt, 169 La. 893, 126 So. 231 (1930):
"The relations between joint adventures are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Co., [164 La. 275, 113 So. 846] supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure `is that, while a co-partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years.'"
14 So.2d at 471.
It is clear that so long as a partnership exists, undissolved and unliquidated, there can be no cause of action by one partner against another for matters arising from the partnership. The remedy is in dissolution of the partnership with division of the assets. Fossier v. American Printing Co., Ltd., 130 So.2d 529 (La.App. 4th Cir. 1961), and cases cited therein.
Regarding the basic issue, the written agreement was identified as a joint venture, and it should be noted that the agreement was drawn up by plaintiff, Marine Services, so that the designation and terms are to be construed against plaintiff, rather than against defendant. C.C. Arts. 1957, 1958. Kuhn v. Stan A. Plauche Real Estate Co., 249 La. 85, 185 So.2d 210 (1966). However, it is well-established that the label given to an agreement is of no consequence in and of itself. In order for there to be a valid joint venture, the requisite elements of a joint venture must be present. Hodges v. Decoteau, 314 So.2d 500 (La.App. 1st Cir. 1975); Sas Jaworsky v. LeBlanc, 239 So.2d 176 (La.App. 3d Cir. 1970); Darden v. Cox, 240 La. 310, 123 So.2d 68 (1960). This principle was well-stated by the First Circuit Court of Appeal in Fiesta Foods, Inc. v. Ogden, 159 So.2d 577 (La.App. 1st Cir. 1964):

*628 "It is settled jurisprudence that even if parties in an enterprise call the relationship a partnership and agree they will give their mutual consent to form it, it will not be considered a partnership in law as between them unless it is evident they share the losses as well as profits and that the property or stock of the undertaking forms a community of goods in which each party has a proprietary interest."
159 So.2d at 583.
There are three major requirements for the existence of a joint venture or partnership to be found. First, all the parties must consent to the formation of a partnership. C.C. Art. 2805. Second, there must be a sharing of the losses of the venture as well as the profits. C.C. Arts. 2811, 2813, 2814. And last, each party must have some proprietary interest in, and be allowed to exercise some right of control over, the business. Westenberger v. State Dept. of Education, 333 So.2d 264 (La.App. 1st Cir. 1976); Vignes-Bombet Co., Inc. v. Rowe, 288 So.2d 889 (La.App. 1st Cir. 1973); Roberson v. Maris, 266 So.2d 488 (La.App. 4th Cir. 1972); Hauth v. Iacoponelli, 251 La. 410, 204 So.2d 767 (1967).
The sharing-of-losses provision has been held to be essential for a joint venture to be found. Hodges v. Decoteau, supra. The provisions in the instant agreement lack clarity as to details, particularly on this point. However, Paragraph 4 provides that the "losses sustained by A-1 in relation to the estimate . . . will be deducted from any profits" to be divided between plaintiff and defendant. This can be read only to mean that plaintiff, Marine Services, will share in the losses by reduction of the profits. It is noted, however, that, although clearly a profit was anticipated by the parties, there is no provision for the division of a net loss on the venture. In the defendant's favor here is the language found in Fossier v. American Printing Co., Ltd., supra, at 532, 533:
"Nothing is mentioned about liability for partnership debts, but when two or more persons make such an agreement which the law defines as a partnership, it is a partnership, and the liability of the parties for the partnership debts is determined by the law relating to partnership even though the parties may not have thought of such consequence."
Plaintiff, on the other hand, contends that this was actually an agency relationship, rather than a joint venture. Defendant was to do all of the construction and work once the bids had been obtained, whereas plaintiff was only to use its name and reputation to secure bids from Litton and to provide supervisory personnel. Thus, plaintiff argues that it was to be compensated for its role by a share of the profits, but that it had no proprietary interest in the operation, nor was it to share in any net losses.
Because of the incompleteness of the terms of this agreement, we cannot know precisely what was intended by the parties at the time they executed this agreement. As was said in Guilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571, 575 (La. App. 1st Cir. 1975), affirmed 338 So.2d 600 (1976),
"[w]hether or not an agreement to cooperate in the execution of a particular work project constitutes a `joint venture' in the legal significance of that term is determined by the circumstances and all aspects of the agreement of the parties and not by any label which the parties themselves may place upon their agreement."
Thus, in this case, the real question becomes one of the intent of the parties, both as expressed in their agreement, and as implied from their agreement and their conduct. Essential for the creation of a joint venture is an intent by the parties that the business relationship between them shall have the characteristics of a partnership. Sas Jaworsky v. LeBlanc, supra; Roberson v. Maris, supra; Hauth v. Iacoponelli, supra; Walker v. Delahoussaye, 116 So.2d 884 (La.App. 1st Cir. 1959). On balance, then, it is our view that due to the ambiguity of the written agreement, the intent of the parties here cannot be determined *629 without an evidentiary hearing. The interests of justice require the resolution of this dispute by a trial on the merits. For this reason, it was error for the trial court to have maintained the exception of no cause of action.
Accordingly, we reverse and remand for a trial on the merits. Because of the merit of plaintiff's appeal, defendant's petition and answer to this appeal are hereby dismissed.
REVERSED AND REMANDED.