420 So.2d 1181 (1982)
Beatrice Gray, Wife of/and Richard V. JOSEPHS
v.
Ozellia R. AUSTIN and Tommy Austin d/b/a Tommy Austin Realty.
No. 5-103.
Court of Appeal of Louisiana, Fifth Circuit.
October 12, 1982.
Rehearing Denied November 17, 1982.
*1182 John M. Garic, Post, Reinhardt, Rougelot, Metairie, for plaintiffs-appellees/appellants.
Leon C. Vial, III, Hahnville, for defendants-appellants/appellees.
Before SAMUEL, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
This appeal arises from a judgment against defendant Tommy Austin, holding him an "owner in fact" and personally liable for a redhibitory defect of a house sold to plaintiff by his mother, Mrs. Ozellia Austin. Plaintiffs, Mr. and Mrs. Richard V. Josephs, also appeal the amount of recovery, attorney fee assessment, and assessment of expert fees. We amend in part, affirm in part, and recast the judgment consistent with our findings herein.
The facts reveal that the defendant, Ozellia R. Austin, purchased a house from HUD on June 2, 1978, without warranty, for the sum of $11,500. On September 8, 1978, she sold the property to plaintiffs, Mr. and Mrs. Josephs, for $30,000. Mrs. Austin's son, Tommy Austin, a licensed real estate broker, acted as agent in both transactions. Subsequent to plaintiffs' purchase, they discovered the house had foundation failure in the form of a cracked slab.
In June, 1979, plaintiffs, Mr. and Mrs. Josephs, brought suit against defendants, Mrs. Ozellia R. Austin and her son Tommy Austin d/b/a Tommy Austin Realty, for rescission of the sale, return of the purchase price and damages. Trial on the merits was heard and on April 1, 1981, judgment was rendered solely against defendant Tommy Austin as the "owner in fact" of the property in question. The trial court reduced the purchase price by $3,000, assessing all costs and attorney's fees against defendant. No judgment was rendered against Mrs. Ozellia Austin in that she died prior to trial, and neither her estate nor her heirs were substituted as parties to the action.

ISSUES PRESENTED BY DEFENDANT
Defendant raises the following issues on appeal:
(1) whether the trial court erred in its factual determination that a "foundation failure" existed on the date of the sale;
(2) whether the court erred in finding the defect non-apparent and non-discoverable upon simple inspection; and
*1183 (3) whether Mr. Tommy Austin was "in fact the owner" of the house and thereby liable in redhibition.
This court finds no merit to either the first or second claim. The fact that the defect existed was amply supported by the testimony of plaintiffs' expert in civil engineering, the prior owners, the HUD official who advertised and negotiated the sale with Tommy Austin, and Tommy Austin's own testimony. The fact that the defect was not apparent, as required by LSA-C.C. art. 2521, is also supported by the evidence.
The evidence shows that the house was in need of repair at the time it was purchased by Mrs. Austin and that the purchase was made pursuant to a HUD advertisement which declared the foundation failure. Subsequent to the purchase by Mrs. Austin, Tommy Austin began renovating the property and continued to do so until the sale to the Josephs. Mrs. Josephs testified that she visited the house several times during the renovation, and that she and her husband moved in one month prior to the date of purchase. She further testified uncontrovertedly that because of the ongoing repair work and its attendant clutter and debris, neither she nor Mr. Joseph noticed any structural flaws, and that complaints made to Mr. Austin both prior to and after the sale involved other various problems unrelated to the defect. Months later, upon speaking to a Mrs. Butler, the owner preceeding Mrs. Austin, she discovered that HUD had rescinded the sale to the Butlers because of a cracked slab. Although Mr. Austin claimed he told Mrs. Joseph prior to the sale that HUD believed a foundation failure existed but that he could find no problem with the foundation, the trial court found otherwise.
A review of the record leads this court to conclude that the trial court's findings of a non-apparent defect are not manifestly erroneous. In the absence of such, the trial court's findings will not be disturbed. Canter v. Koehring, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Perniciaro v. Brinch, 384 So.2d 392 (La.1980).
The third and overriding issue in this case is the question of whether defendant, Mr. Austin, can be held liable as an "owner in fact" for a redhibitory defect. The trial court held defendant Mr. Austin liable as an "owner in fact" of the house in question in that he held himself out as owner in the sale negotiations. The trial judge further found that defendant knew or should have known of the defect, which was non-apparent, and that he failed to so inform the plaintiffs. After a review of the facts and law pertinent to this case, this court concludes that the trial court erred in finding defendant liable in redhibition or quanti minoris since his status was not such as to subject him to liability for the defect under those legal theories. That is not to say, however, that he is free from liability under alternative legal concepts.
The redhibitory action is between seller and buyer, and without such a relationship, the action cannot be maintained. Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1977); Guidry v. Barras, 368 So.2d 1129 (La.App.3d Cir.1979). In order to be deemed a seller for these purposes, some legal ownership must be attributable to that party.
In the case herein, defendant only acted as broker and agent in the negotiations for the original purchase of the house from HUD to Mrs. Austin, and in the subsequent sale to plaintiffs, Mr. and Mrs. Josephs. The facts reveal that the now deceased Mrs. Austin was the record owner of the property at the time of sale and that it was she who signed the act of sale transferring the property to plaintiffs. Absent a showing of some other legal ownership interest, only Mrs. Austin was legally empowered to act on behalf of the property or to be responsible for damages resulting from or caused by the property. Whatever defendant may have asserted as to his proprietary interest prior to sale is irrelevant in an action in redhibition or for reduction of the purchase price. Since Tommy Austin was not the seller, he cannot be deemed liable for the reasons asserted by the trial court.
*1184 He cannot be held an owner, either, on the basis of his relationship to Mrs. Austin. As her succession was never brought before the court, we are precluded from finding liability on the assumption of heirship.
Plaintiffs, however, aver four other theories of liability: (1) Joint Venture; (2) Fraud under LSA-C.C. art. 1847(9); (3) Liability pursuant to LSA-R.S. 37:1447 and LSA-C.C. arts. 3016 and 3017; and (4) Negligent misrepresentation under LSA-C.C. arts. 2315 and 2316.
In Daily States Publication v. Uhalt, 169 La. 893, 126 So. 228 (1930), the Supreme Court of Louisiana defined a joint venture as follows:
... a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. 33 C.J., p. 841, Id. at 231.
Joint ventures are governed by the law of partnership. Marine Services, Inc. v. A-1 Industries, 355 So.2d 625 (La.App. 4th Cir. 1978). The difference between the two is that the joint venture is "usually, but not necessarily, limited to a single transaction...."; Grand Isle Campsites, Inc. v. Cheek, 262 So.2d 350, 355 (La.1972) rehearing denied June, 1972.
In order to form a valid joint venture in Louisiana, the following elements are required:
(A) All parties must consent to formation of a partnership. LSA-C.C. art. 2805.
(B) There must be a sharing of losses of the venture as well as the profits, LSA-C.C. arts. 2811, 2813, 2814.
(C) Each party must have some proprietary interest in, and be allowed to exercise some right of control over, the business.

Marine Services, Inc. v. A-1 Industries, 355 So.2d 625, 628 (La.App. 4th Cir.1978).
The facts of the case herein fail to show any of the requisite elements of such an agreement. Mr. Austin handled, as broker, the purchase and resale of the property. He loaned Mrs. Austin the purchase money for the house, received both commissions, and deposited the profits of the sale in his bank account. Both defendants claimed the house was purchased as a residence for Mrs. Austin, although prior to purchase from HUD, Mr. Austin may have formed the intention of selling the property to plaintiffs. Whatever the true purpose the purchase and subsequent sale to plaintiffs may have been, we cannot classify defendant's actions as a joint venture.
Plaintiffs also assert defendant's liability for fraud under LSA-C.C. art. 1847. The evidence does not warrant such a holding. Legal fraud in Louisiana requires both intent to defraud as well as actual or probable damage. Hall v. Arkansas-Louisiana Gas Co., 368 So.2d 984 (La. 1979). Proof of fraud must be clearly and convincingly established and not merely by a preponderance of the evidence. Hall, supra. While the evidence here reflects that defendant knew of a defect and failed to disclose it to plaintiffs, the facts do not indicate an intentional misrepresentation necessary for a finding of fraud. Thus, we find the allegation meritless.
Plaintiffs' third theory asserts that defendant can be held liable in damages pursuant to either LSA-R.S. 37:1447[1] since repealed but in effect at the time of this action, and/or LSA-C.C. arts. 3016 and 3017[2]. A review of the caselaw reveals a diverse and confused application of the aforementioned provisos by the courts to *1185 cases similar to the one before us.[3] Because of the elusive nature of real estate agent and/or broker responsibilities under LSA-R.S. 37:1447 and LSA-C.C. arts. 3016 and 3017, this court prefers to resolve the issue on a less precarious basis, particularly since the articles provide no greater remedies than already exist at law.
Plaintiffs, as a last alternative, argue that defendant Austin's knowledge of the house, its history and his subsequent failure to communicate the information constituted a breach of duty sufficient to subject him to liability in negligent misrepresentation. We agree. The Louisiana Supreme Court has recognized that LSA-C.C. arts. 2315 and 2316 afford a broad ambit of protection for persons damaged by intentional and negligent acts of others, sufficient to encompass a cause of action for negligent misrepresentation. Devore v. Hobart Mfg. Co., 367 So.2d 836 (La.1979). Our courts have held that in order to apply negligent misrepresentation, there must be a legal duty to supply the correct information, and a breach of that duty causing damage to plaintiff. Hilliard v. La. Health Service & Indemnity Co., d/b/a La. Blue Cross, 411 So.2d 1116 (La.App. 4th Cir.1982) rehearing denied; Beal v. Lomas & Nettleton Co., 410 So.2d 318 (La.App. 4th Cir. 1982).
As noted previously, the courts have historically struggled with the nature and source of real estate broker and agents' duties. However, the Supreme Court, without clarifying the source of the duty has also stated that:
The precise duties of a real estate broker must be determined by an examination of the nature of the task the real estate agent undertakes to perform and the agreements he makes with the involved parties. Latter and Blum, Inc. v. Richmond, 388 So.2d 368, 372 (La.1980).
A specific duty to communicate accurate information to seller or purchaser, or both when the circumstances warrant, is supported by the jurisprudence. Guidry v. Barras, 368 So.2d 1129 (La.App. 3rd Cir. 1979); Norgren v. Harwell, 172 So.2d 723 (La.App. 4th Cir.1965). In addition, realtors should be subject to liability for negligent misrepresentation when the facts warrant it due to the nature of the business. Purchasers in a competitive market must often act quickly. Real estate usually involves a significant expenditure. Where one broker negotiates for both vendor and vendee, it is particularly important that the broker-agent relay accurate information, since both parties are relying on his honesty, access to information, knowledge and expertise.
In the case herein, it is evident that defendant was the sole realtor involved in the negotiations and sale of the house to plaintiffs and that he failed to disclose a defect of which he had knowledge. Defendant does not dispute that he knew at the time he negotiated the purchase of the property for his mother that HUD had discovered foundation failure and for that reason had rescinded the sale to the prior owners. He maintained, however, that at no time did he believe the HUD officials, and that it was his and his carpenter's opinions that the problems were attributable to termite damage.
Although disputed by Mr. Austin, we are satisfied the trial court correctly found that he failed to disclose this vital piece of information which conceivably would have prompted the purchasers to either reject the house or negotiate a lower price under all the circumstances and facts here, his negligent or intentional misrepresentation of, and failure to disclose, the facts clearly caused plaintiffs to suffer the losses of which they complain.
While this court recognizes that negligent misrepresentation as a legal remedy is in its infancy in Louisiana, it is a concept consistent with the purposes and policies of the Civil Code. If applied with restraint, its *1186 application to real estate agents and brokers would not unduly burden that profession. Since the facts here warrant a holding that Mr. Austin, as an agent and broker, breached a duty to plaintiffs to disclose a defect of which he had knowledge, we find defendant liable in damages.

ISSUES PRESENTED BY PLAINTIFFS' APPEAL
The issues presented by plaintiffs are as follows: (1) Whether the trial court erred in limiting the Josephs reduction in price to $3,000; (2) Whether the trial court erred in limiting the award of attorney's fees to the Josephs' attorney to $500; and (3) Whether the trial court erred in failing to tax the expert fees of B.M. Dornblatt as costs against the defendant.
In reference to the first allegation, the trial court noted that figures estimating costs of repair were not in evidence, but based its finding on its "limited discretion." Menville v. Stephens Chevrolet, Inc., 300 So.2d 858 (La.App. 4th Cir.1974). The evidence admitted was that the methods commonly used to repair a cracked slab would be either cost prohibitive, i.e., razing the property and rebuilding, or would involve a probability of further damage with little chance of success, i.e., mudjacking. For those reasons, the expert recommended no action at present, and repairing problems as they arise in the future. The HUD official also testified that HUD re-purchased the property from the prior owners because he found the home could not be repaired economically.
The liability of Mr. Austin is one in damages rather than redhibition. We may, however, be guided by the method to calculate reduction in order to assess the damages in this case.
In Menville, supra, at 862, the court stated, "... if the defects are numerous and repairs lengthy and frequent, a greater reduction is warranted, because a forewarned buyer would not reasonably pay the full price, reduced only by the cost of repairs...."
Based on the evidence, the court had the following to work with in calculating the fair value:

Purchase price from
 HUD $11,500
Renovation costs $12,000 to $14,000
Sale price to plaintiffs $30,000
Cost to repair No figure given
Reduction $3,000
Court's determination of
 fair market value at
 sale $27,000

Since the liability of defendant is in tort, defendant should not be allowed to profit in this transaction. When the record clearly reveals that the trier of fact abused its discretion in making its award, the court of appeal must disturb that award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Perniciaro v. Brinch, 384 So.2d 392 (La.1980). Assuming he made some improvements, and giving defendant benefit of the doubt at a minimum of $12,000 in costs, we find the value of the unwarranted property with improvements equals $23,500. Applying Menville, supra, we believe the correct amount for this portion of the damages to be $6,500, since it is unlikely plaintiffs would have purchased a house with foundation failure for $27,000 as found by the trial court.
Plaintiffs also testified to repairs they were forced to undertake due to the defect. After the act of sale, windows, floors and walls began cracking, thus necessitating extensive repair work and inconvenience. We think it reasonable to reimburse plaintiffs an appropriate amount for those costs as a further element of damages. The testimony of the experts that further repairs will likely be required moves this court to also include some future damages. Based on the foregoing, we conclude the proper amount of recovery is $2,500 for these items of damage.
The last two issues presented by plaintiffs are the assessment of attorney fees and the expert fee of $500. Since attorney fees are generally not recoverable in a tort action, we must reverse the trial court's award in that respect.
*1187 The question, however, of Mr. Dornblatt's expert fee is well taken and should be taxed as costs pursuant to LSA-C.C. art. 1920; LSA-C.C.P. art. 2164.
For the reasons assigned, the judgment appealed from is amended in part, reversed in part and recast so as to read as follows:
AMENDED IN PART, AFFIRMED IN PART AND RECAST.
NOTES
[1] The particular provisions of LSA-R.S. 37:1447(B) provides that "anyone" injured by a wrongful act of a broker or agent in furtherance of his business or injured by fraud or misrepresentation may sue for recovery of the damage. However, Part (A) deals with the requirement of a broker to secure a surety bond. The caselaw is unclear as to whether Part (B) only applies to actions on the bond.
[2] LSA-C.C. art. 3016 declares that a broker owes the same fidelity toward all parties, and LSA-C.C. art. 3017 declares brokers liable, as other agents, for fraud or faults. Again, confusion exists in the law as to the applicability of these articles to real estate transactions in view of the statutory regulations.
[3] See: The Real Estate Broker-Purchaser Relationship: Louisiana and the Common Law, 52 Tul.L.R. 157 (1977).