452 So.2d 212 (1984)
CAJUN ELECTRIC POWER COOPERATIVE, INC., et al.
v.
Shirley McNAMARA, Secretary of the Department of Revenue and Taxation, State of Louisiana.
No. 83 CA 0680.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
Rehearing Denied June 29, 1984.
Writ Denied October 12, 1984.
*213 Robert R. Rainer, Baton Rouge, for plaintiffs-appellants Cajun Elec. Power Coop. Inc. and Stone & Webster Engineering Corp.
*214 Robert H. Carpenter, Jr., Douglas F. Herbert and Riley F. Boudreaux, Jr., Baton Rouge, for defendant-appellee Shirley McNamara, Secretary of the Dept. of Revenue and Taxation, State of La.
Before PONDER, WATKINS and CARTER, JJ.
CARTER, Judge.
This is a suit filed by Cajun Electric Power Cooperative, Inc. (Cajun) and Stone and Webster Engineering Corporation (S & W) for refund of sales and use taxes paid under protest by Cajun to the State of Louisiana.
In April of 1971, Gulf States Utilities Company (GSU) and S & W entered into a contract for the construction of the River Bend Nuclear Power Plant.
Eight years later (August, 1979), during the course of the construction, GSU and Cajun agreed that Cajun would become a 30% co-owner of River Bend. Pursuant to this agreement, GSU and Cajun executed a contract captioned "Joint Ownership Participation and Operating Agreement." GSU and Cajun agreed that Cajun would acquire its 30% undivided co-ownership interest in River Bend in the following manner. All construction costs up to the point of Cajun's entry into the project had been paid for by GSU. It was agreed that beginning in January, 1981, Cajun would begin paying for all costs of construction and would continue to do so until such time as Cajun had bought and paid for costs of construction which equaled 30% of the total which had been spent on such costs up to that point in time.
From January, 1981, through November, 1981, Cajun paid for all construction costs. During this period, GSU did not contribute any funds. After November, 1981, Cajun had contributed funds which equaled 30% of the total costs, and the parties were at what they refer to as "parity." Since November, 1981, GSU and Cajun have been responsible for the costs of construction by paying 70% and 30%, respectively. The project is still under construction, and the 70/30 contribution is still in progress.
At trial, Cajun contended that, as an electric cooperative, it is exempt from all sales and use taxes pursuant to LSA-R.S. 12:425. Cajun argues that all construction materials and equipment were purchased by Cajun, with S & W only acting as purchasing agent. Cajun contends that the exemption granted by 12:425 is applicable to all such purchases, and therefore, no sales or use taxes are owed.
The trial court, in oral reasons for judgment, found that Cajun, as an electric cooperative, was exempt from sales and use taxes, but that S & W, as the purchaser and final customer, owed both sales and use taxes. The court found that S & W was an independent contractor for the purpose of construction of the plant, and therefore, could not also act as an agent of Cajun in the purchase of equipment and materials.

AGENCY
Plaintiffs appeal the ruling of the trial court assigning as error the failure of the trial court to find that S & W was acting as purchasing agent for Cajun and, therefore, that the purchases were tax exempt.
The resolution of this issue is necessary because if S & W is an agent of Cajun or GSU or both, then clearly the principal owes the taxes under basic agency principles. However, if S & W is an independent contractor, as the trial court determined, then S & W is liable for the sales taxes on purchases to construct River Bend, and neither of the joint venturers are liable to the state for sales taxes.
In the case sub judice, the record clearly indicates that an agency relationship existed between Cajun and S & W. For example, the power of attorney executed by Cajun appoints Stone & Webster Engineering Corporation "to act for it in its name, place and stead, for the purpose and rental of tangible personal property with funds constributed (sic) by principal...."
*215 In the case sub judice, the record clearly indicates that an agency relationship existed between Cajun and S & W. For example, the power of attorney executed by Cajun appoints Stone & Webster Engineering Corporation "to act for it in its name, place and stead, for the purpose and rental of tangible personal property with funds contributed (sic) by principal...." Additionally, the purchase orders used by S & W in obtaining material and equipment show that S & W was acting as purchasing agent.
An examination of the entire record convinces us that S & W was not an independent contractor, but was agent of Cajun.[1]

JOINT ADVENTURE
The early case of Ault & Wiborg Co. of Canada v. Carson Carbon Co., 181 La. 681, 160 So. 298 (La.1935) defined joint venture as follows at p. 300:
"The legal relation of joint adventure now widely recognized in judicial decisions results from the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of a partnership, although the facts do not show a formal partnership. While a joint adventure is not identical with a partnership, it is analogous to a partnership and is controlled largely by the principles or rules applicable to partnerships."
The jurisprudence has established that the essential elements of a joint venture are generally the same as those of partnership, i.e., two or more parties combining their property, labor, skill, etc. in the conduct of a venture for joint profit, with each having some right of control. Walker v. Simmons, 155 So.2d 234 (La.App. 3rd Cir.1963). Therefore, in general, joint ventures are governed by the law of partnership. Marine Services, Inc. v. A-1 Industries, 355 So.2d 625 (La.App. 4th Cir.1978).[2]
LSA-C.C. art. 2801 defines partnership as follows:
"A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit...."
The same requisites are applicable to a joint venture,[3] and are as follows:
(1) A contract between two or more persons;
(2) A juridical entity or person is established;
(3) Contribution by all parties of either efforts or resources;
(4) The contribution must be in determinate proportions;
(5) There must be joint effort;
(6) There must be a mutual risk vis-avis losses;
(7) There must be a sharing of profits.
All of the above items are found in the case sub judice, either in the Joint Ownership Participation and Operating *216 Agreement, the Powers of Attorney, or otherwise. Cajun and GSU agreed to combine their resources in a 70% and 30% ratio, to collaborate, and to share the risk of loss and the hope of gain.
During August, 1979, when GSU and Cajun agreed that Cajun would become a co-owner of River Bendand the various contracts and powers of attorney were signeda joint venture came into existence between the two parties.
Cajun strenuously contends that Article Seven of the Joint Ownership Participation and Operating Agreement expressly provides that its association with GSU would not be a partnership or joint venture. Article Seven, Section 7.6 of the Joint Ownership Participation and Operating Agreement provides as follows:
"Notwithstanding any provision of this Agreement, the Co-owners do not intend under Louisiana or Texas law to create hereby or by their actions as Co-owners any joint venture, partnership, association, or trust, or render the Co-owners liable as partners or trustees."
The existence or nonexistence of a joint venture is a question of fact, although what constitutes a joint venture is a question of law. Grand Isle Campsites, Inc. v. Cheek, 262 La. 5, 262 So.2d 350 (La.1972). There are no hard and fast legal rules fixing the requisites for a joint adventure; each case must be considered sui generis and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a "joint venture." Hero & Company v. Farnsworth & Chambers Co., 236 La. 306, 107 So.2d 650 (La.1958).
Cajun's argument overlooks the obvious that the legal relationship of parties will not be conclusively controlled by the terms which the parties use to designate their relationship, especially with regard to third parties. Courts look to the totality of evidence and not just the written agreement between the parties to determine whether a joint venture was entered into. Guilbeau v. Liberty Mutual Insurance Company, 324 So.2d 571 (La.App. 1st Cir. 1975).
It is interesting to note that in Article Nine of the Joint Ownership Participation and Operating Agreement, GSU and Cajun contracted as follows:
"9.1 Tax Partnership: The co-owners, collectively sometimes referred to as `partners,' agree that their participation under this agreement, shall, for the purpose of federal and state income taxes and subject to Section 9.11, be considered and taxed as a general tax partnership (`tax partnership') and such tax partnership shall be governed by the provisions of this article."
Therefore, on the one hand Cajun and GSU are contracting that they are not a partnership or joint venture and thus seek to avoid payment of sales, use, and other excise taxes, and on the other hand they claim the advantages of being a "partnership" for state and federal income tax purposes.
Clearly, GSU and Cajun are engaged in a joint venture in spite of their expressed disclaimer because when two or more persons or concerns enter into an agreement which the law defines as a partnership or joint venture, it becomes a juridical entity and the liability of the parties is determined by the law relating to partnership or joint venture even though the parties may not have thought of such consequences and even sought to avoid the consequences of sales tax, etc. See Fossier v. American Printing Co., Ltd., 130 So.2d 529 (La.App. 4th Cir.1961). The relationship between Cajun and GSU exhibits all of the elements of a joint venture and in fact they maintain that they are a partnership or joint venture for state and federal income tax purposes. They cannot be heard to deny that they are a joint venture to avoid payment of sales and use taxes.
The basis for the exemption claimed by Cajun is found at LSA-R.S. 12:425 which reads as follows:
"Each cooperative shall pay annually, on or before the first day of July, to the *217 department of revenue, a fee of ten dollars for each one hundred persons or fraction thereof to whom electricity is supplied within the state by it, but shall be exempt from all other excise and income taxes whatsoever."
It is clear from the statutory provisions quoted above that the legislature intended for electric power cooperatives, as separate entities, to be granted certain tax exemptions, i.e., excise and income tax exemptions.
In the instant case, appellant is correct in arguing that Cajun, as an electric cooperative, is entitled to the tax exemption provided for in LSA-R.S. 12:425. However, we find no language in the statute which will allow us to extend the legislatively granted exemptions to a situation in which Cajun acts as a participant in a joint venture. If the legislature had intended the exemption to apply to an electric cooperative when it entered into a joint venture or partnership, it could have easily so provided.
Exemptions from taxation are to be strictly construed against the person claiming the exemption, and any plausible doubt is fatal. In like manner, an exemption being an exceptional privilege, it must be clearly, unequivocally and affirmatively established. A & P Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260 (La.App. 1st Cir. 1978), writ refused, 363 So.2d 923 (La. 1978); Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir.1977), writ refused, 353 So.2d 1035 (La.1978).
Although electric cooperatives are entitled to such an exemption under LSA-R.S. 12:425, a different situation exists when the cooperative changes its identity or assumes a new role.
The joint venture is not exempt from the taxes. The exemption contained in LSA-R.S. 12:425 applies only when Cajun acts singularly as an electric cooperative and not when it engages in a business venture with a non-exempt entity. Since there is no specific sales and use tax exemption for the joint venture as a legal entity, we find that the specific exemption claimed by Cajun has not been clearly, unequivocally and affirmatively established in the instant case.
Therefore, the sales taxes for purchases made by S & W for construction of River Bend are due and attributable to the partners to the extent that they have contributed to the joint venture. GSU has paid its 70% share of the sales taxes, leaving Cajun liable for its proportionate share (30%) of the taxes, which Cajun paid under protest.
For the reasons set forth herein and not for the reasons assigned by the trial court judge, the judgment of the trial court is affirmed. All costs are to be paid by appellants.
AFFIRMED.
NOTES
[1] In addition, a similar agency relationship existed between GSU and S & W and GSU and Cajun.
[2] In Daily States Publishing Co. v. Uhalt, 169 La. 893, 126 So. 228, at 231, (1930) it was stated:

"The relations between joint adventures are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton Co., [164 La. 275, 113 So. 846] supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure `is that, while a co-partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years.'"
See also McCann v. Todd, 203 La. 631, 14 So.2d 469 (1932); Marine Services, Inc. v. A-1 Industries, Inc., supra.
[3] Cf. Josephs v. Austin, 420 So.2d 1181 (La.App. 5th Cir.1982), writ denied 427 So.2d 870 (1983); American Fidelity Fire Ins. Co. v. Atkison, 420 So.2d 691 (La.App. 2nd Cir.1982); Roberson v. Maris, 266 So.2d 488 (La.App. 4th Cir.1972); Walker v. Simmons, supra, and cases cited therein.