476 So.2d 12 (1985)
R & R ENTERPRISES OF NEW ORLEANS, INC. (Rita S. Bourgeois and Robert J. Bourgeois)
v.
RIVERS AND GULF MARINE SURVEYORS, INC.
No. 85-CA-58.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 1985.
Richard M. Michalczyk, Cronvich, Wambsgans & Michalczyk, Metairie, for plaintiff-appellant.
James M. Tompkins, Timothy P. Hurley, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendant-appellee.
Before CHEHARDY, GAUDIN and GRISBAUM, JJ.
GAUDIN, Judge.
R & R Enterprises of New Orleans, Inc. instituted this proceeding in the 24th Judicial District Court for damages allegedly *13 caused by Rivers and Gulf Marine Surveys, Inc. in negligently preparing a survey and appraisal report on a vessel known as "The Riverboat Tchefuncte", a floating restaurant situated in Madisonville, Louisiana.
Rivers and Gulf eventually moved for a summary judgment, which was granted dismissing R & R's petition.
On appeal, R & R argues that the motion for summary judgment was granted in spite of the presence of several issues of material fact. Also, R & R contends that discovery hadn't been completed at the time the motion for summary judgment was argued. We do not agree with these contentions and we affirm the district court judgment.
In its petition, R & R alleged that Rivers and Gulf did a survey and appraisal at the request of the First Guaranty Bank of Hammond; and that as a result of this report, R & R purchased the riverboat on February 28, 1985 for $185,000.00. The petition states that Rivers and Gulf prepared its report "... in a negligent fashion and that the premises were inadequately inspected ..." Further, the petition states that the report "... failed to disclose the hidden defects and actual conditions of the hull ..."
R & R says it detrimentally relied on Rivers and Gulf's expertise and its report, which was dated February 8, 1983. In response, Rivers and Gulf denied that it was guilty of any fault or neglect.
The survey and appraisal, prepared by a Rivers and Gulf surveyor, Sheldon G. Held, is in the record. In pertinent part, the report reads as follows:
RIVERBOAT TCHEFUNCTE
THIS IS TO CERTIFY that the undersigned marine surveyor did on February 2, 1983 at the request and for the account of the First Guaranty Bank of Hammond, Louisiana attend the floating restaurant known as the "RIVERBOAT TCHEFUNCTE", owned and operated by Mr. Rene Nicolas, d/b/a Riverboat Tchefuncte, Inc., as the restaurant lay afloat at its moorings on the East Bank of the Tchefuncte River, adjacent the Highway 21 Bridge at Madisonville, Louisiana; in order to ascertain the condition and valuation for financial purposes.
GENERAL DESCRIPTION
The restaurant is housed in a wooden frame single level deckhouse of approximately 4,200 square feet, constructed on a floating moored barge.
The entity has enjoyed a good "North Shore" following and has been quite successful over the years.
CONCERNING THE BARGE
The vessel was originally constructed by Nashville Bridge Co., Nashville, Tennessee during 1939 and delivered to its original owners with the designation "CBC-701" and assigned official number 174511.
At the time of construction riveted construction was in vogue, however, very little evidence remains of this and reconstruction over the years has evolved into an essentially all welded barge.
The barge is of the flat deck cargo type having a raked bow and stern, with a pronounced sheer over the bow and stern compartments, with the restaurant ranging from approximately 10' aft and forward of the bow and stern and inboard approximately 3' from each side.

 PRINCIPLE DIMENSIONS
Length - 188'
Breadth - 34'
Depth - 12'

CONSTRUCTION AND COMPARTMENTATION
Essentially all welded steel having four (4) transverse and one (1) longitudinal centerline bulkhead dividing the hull as follows:
Bow compartment
Six (6) main body compartments
Stern compartment *14 Note: Due to limited access, only three (3) internal compartments were viewed. In each compartment viewed, the centerline bulkhead has been cut to permit access to adjacent tanks that have no access from the main deck.
The entire deck is overlaid with approximately 3-4" of concrete, except in way of bow, stern and 3' of side decks.
CONDITION
The side shell appears thin, but serviceable. The deck and framing is generally bowed down between bulkheads 0-3". The side shell is bowed in 0-3" between and over frames for full length. The interior contains 0-4" of mud and water where viewed. The deck knuckles are heavily set-in 0-6" in numerous scattered areas. The interior bulkheads are set-in and opened adjacent the deck knuckle insets.
Bulkheads, interior side shell and frames are moderately scale rusted. The back frames appear to be of more recent vintage and are generally free of scale rust.
ACCESS
Access is available to four (4) compartments through various type manholes, which are neither weather or watertight.
COMMENTS
Given the present condition of the barge and the restaurant, it is the writer's opinion that with reasonable care and upkeep the unit should have a further life span of 10-15 years, assuming it will remain at its present fresh water protected berth (the barge is usually partially aground on a mud bottom).

Note: All of the foregoing predicated on visual inspection without ultrasonic measurements to determine remaining plate thicknesses.
VALUATIONS

Note: The following valuations are predicated on continued use as a static restaurant and are purely subjective on the writer's part, as the barge hull has no commercial value as a unit in commercial transportation.
In effect, it would only have minimum scrap value on today's market.
Therefore, the writer can only advance replacement values, as it is beyond the scope of the inspection for the writer to establish a value to the business enterprise.

 ESTIMATED REPLACEMENT VALUES
Barge.................................$275,000.00
Building (less moveable items, but
 including heating, air
 conditioning and usual amenities
 and fixtures @ $35 per sq. ft.).....$147,000.00

As far as may be ascertained from a general examination of this vessel afloat, without removals or opening up to expose parts ordinarily concealed, and without taking drillings to ascertain thickness of structural members, testing for tightness, or opening up the machinery, it is the opinion of the undersigned that her hull, machinery and equipment are in satisfactory condition for operation.
In the fall of 1983, R & R decided to improve the riverboat restaurant and a second appraisal was needed. The second report, dated October 26, 1983, is also in the record. It was prepared by Gregory B. Weeter, another Rivers and Gulf surveyor, and is basically identical to the February, 1983 report except it gives the riverboat a life span of 10 years and it points out several relatively minor flaws in the hull not noted in the first report.
The second report also states that "... the barge is not suitable for movement from its present grounded static location." The first report gives the riverboat a life span of 10 to 15 years, "... assuming it will remain at its present fresh water protected berth ..." Both reports place the replacement value of the barge at $275,000.00.
A third survey, prepared by M.J. Schiehl & Associates, Inc. on November 15, 1983, is also in the record. It finds the riverboat *15 unseaworthy and concludes the "... barge should not be moved without temporary repairs." The Schiehl report adds that:
"The useful life of the barge upon completion of recommended repairs ... should approach 15 to 18 years."
In opposition to the motion for summary judgment, R & R argues that its cause of action is based on negligent misrepresentation and it cites Josephs v. Austin, 420 So.2d 1181, (La.App. 5th Cir.1982). The main difference between the two reports, R & R argues, is that the second report clearly and unequivocally says that the barge "... is not suitable for movement ..." while the February, 1983 report is not so precise. In its memorandum in opposing summary judgment, R & R states that "... all parties knew that the vessel may have to be moved at some later date."
Rita Stephens Bourgeois, president of R & R, says in her submitted affidavit that "... all parties involved knew the potential that the vessel may be moved at some future date." She further states that "... unseaworthiness of the vessel ..." was not mentioned in the February 8, 1983 report, and that if she knew the riverboat couldn't be moved she wouldn't have purchased it.
The trial judge did not assign reasons for granting the motion for summary judgment, but no doubt he was impressed, as we are upon careful review of the reports, that the February 8, 1983 survey and appraisal did not suggest or imply that the barge was seaworthy and could be safely moved and that neither report contained any negligent misrepresentations.
Actually, the February 8, 1983 survey and appraisal speaks for itself. The report (1) assumes that the barge will remain where it was, (2) makes valuations predicated on continued use of the riverboat as a static, in place restaurant and (3) says straight-forwardly that the barge has no value as a unit in commercial transportation. A reasonable person reading this report, with or without a maritime background, could only conclude that the barge, in the condition it was in, could not be moved.
LSA-C.C.Pr. art. 966 states:
"The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
"The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
Here, the "genuine issue of material fact" alluded to by R & R relates to the wording of the February 8, 1983 survey and appraisal. If there is no misrepresentations, intentional or otherwise, in this report, there are no issues to be judicially resolved. The trial judge found no triable issues and we cannot say he erred.
Appellant's second assignment of error is that discovery was still in progress when the motion for summary judgment was granted. The petition was filed on December 30, 1983 and the motion for summary judgment argued more than nine months later on October 5, 1984, giving both parties ample discovery time. We are unable to determine from the record exactly what discovery hadn't been completed. R & R made no specific reference to any outstanding deposition or to any problem it was experiencing concerning discovery.
The trial judge did not abuse his wide discretion by hearing the summary judgment motion when he did and in rendering judgment five days later on October 10, *16 1984. We affirm the district court decree, with R & R to bear the costs of this appeal.
AFFIRMED.