107 So.2d 650

HERO & COMPANY, d/b/a Valley Supply Company.

v.

FARNSWORTH & CHAMBERS CO., Inc., et al., Bernard Younger and Roy Loup, d/b/a Loup & Younger.

No. 43625.

Dec. 15, 1958.

Rehearing Denied Jan. 12, 1959.

George O'Dowd, Monroe & Lemann, J. Raburn Monroe, Andrew P. Carter, New Orleans for defendants-appellants.

Deutsch, Kerrigan & Stiles, Gerald J. Gallinghouse, New Orleans, for appellee.

SIMON, Justice.

This is a suit wherein a materialman is seeking to obtain a solidary money judgment for materials furnished on a particular building project against a subcontractor, to whom the materialman furnished supplies, the general contractor and its surety, and the lessee of the property on which the improvements were constructed. The materialman also seeks recognition of a materialman's lien upon the lease and the improvements constructed thereon.

Plaintiff is Hero & Company, a partnership engaged in the selling of plumbing and electrical supplies under the trade name of the Valley Supply Company, henceforth to be referred to as Valley.

Defendants are the following: Roy Loup and Bernard Younger, doing business under the name of Loup & Younger, plumbing contractors; Farnsworth & Chambers Co., Inc., general contractors, henceforth referred to as Farnsworth; Aetna Casualty & Surety Company, surety for the general contractor; and the F. &

C. Realty Company and its assignee, Gilmore Park Homes, Inc., lessees of the land and owners of the improvements erected thereon.

On August 6, 1955, the F. & C. Realty Company consummated a 75-year lease with the United States for certain government-owned land in the Algiers section of New Orleans for the purpose of erecting and operating a housing project for the use of U. S. Navy personnel. The F. & C. Realty Company then entered into a building contract with its companion corporation, Farnsworth, as prime contractor for the construction thereof. In connection with this contract, the Aetna Casualty & Surety Company executed a bond guranteeing the faithful performance of the contract and the payment of all persons performing work or furnishing materials in connection therewith. Neither the contract nor the bond was recorded.

Bids for the plumbing and heating work required in the project having been submitted, Loup & Younger, being the lowest bidder, was awarded the sub-contract on condition that it furnish a satisfactory performance bond. Unable to do so, Loup & Younger presented an alternative arrangement to Farnsworth whereby Valley would furnish all materials required under Loup & Younger's sub-contract and would waive its materialman's lien privilege if Farnsworth would make all checks payable under the sub-contract to the joint account of Valley and Loup & Younger. This arrangement was accepted as evidenced by the exchange of the following two letters:

"November 7, 1955

"Farnsworth & Chambers Co., Inc.
121 Jefferson Hwy.
New Orleans, La.

"Attention: Mr. Stewart

"Subject: Navy Project Gilmore Park
New Orleans, Louisiana

"Gentlemen:

"On the Gilmore Park Project, we are furnishing your plumbing subcontractor, Loup & Younger, with the materials for this job.

"In consideration of your making all checks and payments jointly payable to Valley Supply Company and Loup & Younger on this job, we will waive our material lien privilege.

"Very truly yours,

E. D. Marsh (signed)
General Manager

"Loup & Younger

Roy L. Loup (signed)

Bernard J. Younger (signed)

Jefferson Parish, La.

Subscribed by E. D. Marsh, Roy L. Loup and Bernard J. Younger before me, Notary, This 15th day of November, 1955.

"(Signed) Wm. J. White
Notary Public."

"November 28, 1955

"Valley Supply Co.
1200 Lafayette St.
Gretna, Louisiana

"Attention: Mr. E. D. Marsh, General Manager

"Reference: Gilmore Park Housing Project
New Orleans, Louisiana

"Dear Mr. Marsh:

"We acknowledge receipt of your letter dated November 7, 1955 in which you advise you are furnishing the materials for reference project and in consideration of Farnsworth & Chambers making all checks payable jointly to Valley Supply Co. and Loup & Younger, you will waive your material lien privileges. The document as written and executed is agreeable to Farnsworth and Chambers and this letter will act as our acceptance.

"It is understood that Valley Supply Co. is to furnish *all* materials to Loup & Younger and it is your obligation and responsibility for all materials furnished for this job.

"Yours very truly,

Farnsworth & Chambers Co., Inc.

By: J. M. Gubble (Signed)

for O. H. Brigman

"OHB/leh

Loup & Younger

Roy L. Loup (Signed)

Bernard J. Younger (Signed)

12–1–55"

———◆———

Farnsworth then entered into the subcontract with Loup & Younger at a base price of $92,345.61. Subsequent change orders increased the sub-contract to a total price of $97,948.70. The work was begun and prosecuted through to completion though not without several difficulties and disagreements arising among the three parties involved in this phase of the work. During the course of the work Farnsworth issued checks totalling $78,857.10 payable to the joint account of Loup & Younger and Valley, and has admittedly withheld the remaining $19,091.70, pending settlement of all claims arising thereunder.

Notwithstanding its agreement to waive its liens and privileges, and, in fact, claiming a prior breach by Farnsworth, Valley recorded affidavits of claim for $19,474.33 against the improvements and the lease and then instituted this suit for personal judgment for the above sum against the aforenamed defendants in solido and for recognition of their lien privileges. Reference has been made to two other claims made upon Farnsworth under Loup & Younger's subcontract by subcontractors employed by Loup & Younger but these claims are not involved in this proceeding, and as to which we make no comment.

All defendants answered, pleading special defenses. Defendants Loup & Younger contended that its agreement with plaintiff constituted a joint venture under the law and prayed for an accounting and settlement thereof. Defendants Farnsworth, F. & C. Realty Company, Inc., Gilmore Park Homes, Inc., and Aetna Casualty & Surety Company set up the defense payment as well as the existence of a joint venture between plaintiff and Loup & Younger.

The trial court found that the agreement existing between plaintiff and Loup & Younger was not, in legal contemplation or in the intent of the parties, a joint venture, but was simply an exclusive buy and sell agreement, with an assurance of payment by a third party in exchange for a waiver of lien privileges. The trial court further found that the third party, Farnsworth, breached its contract by its failure to have made progress payments, and thereby held plaintiff justified in recording its lien privilege notwithstanding its prior waiver of same. The trial court, accordingly, rendered judgment as prayed for in favor of plaintiff and against all defendants solidarily. All defendants have appealed.

A close scrutiny of plaintiff's position reveals that it is relying on contradictory positions to establish its claim. On the one hand, it asserts that their entire agreement is embodied in an exchange of letters between itself and Farnsworth. It asserts this position to obviously overcome the defendants' contention that it is a "co-adventurer" with Loup & Younger. Then, on the other hand, it attempts to incorporate the provisions of the sub-contract between Loup & Younger and Farnsworth into its specific agreement with Farnsworth as a basis for thus asserting a prior breach of the contract by Farnsworth. One stand must yield, and the abandonment of either is fatal to plaintiff's action against all defendants except Loup & Younger.

Let us examine plaintiff's first position. If their entire agreement is embodied in the two letters of November 7, and November 28, 1955, supra, then the only reasonable interpretation is that plaintiff gave up all of its lien rights against the general contractor, the surety, and the improvement owner in exchange for prefer-

ential payment over all others from the money that would come into the hands of its customer, Loup & Younger, under this sub-contract. There could be no other reason for making the progress payments payable to the joint order of plaintiff and Loup & Younger. It is uncontroverted that Farnsworth gave plaintiff preferential access to $78,857.10 as evidenced by their jointly payable checks. Though the value of the materials furnished by plaintiff is in dispute, the amount asserted by plaintiff itself does not exceed $66,858.52. There is nothing in the two letters that would indicate how these jointly payable checks were to be apportioned between plaintiff and Loup & Younger.

■ If the agreement between them was a simple buy-sell agreement, as we conclude it to be, then the only possible apportionment would be that plaintiff would enjoy preferential payment for its materials and Loup & Younger would receive the surplus. To hold otherwise would be to go beyond the terms and conditions stipulated in the two letters which plaintiff asserts constitutes the whole of their agreement. Plaintiff had within its complete control sufficient funds out of which the indebtedness due it for sold materials could have been paid. Rather than pay this indebtedness from these funds plaintiff applied portions thereof as advances to Loup & Younger in meeting the latters' payroll. Regardless of the motives which prompted the diversion of these funds, it cannot now be heard to urge nonpayment of the indebtedness due it for materials sold and delivered. It follows that plaintiff must now look to its purchaser, Loup & Younger, for reimbursement of any claim of nonpayment.

■ The shortage of funds for the payment of materials resulted from plaintiff's imputation of part of the jointly payable funds to loans made to Loup & Younger to meet their payrolls. No authority for this imputation can be found in the aforementioned two letters of agreement. Plaintiff relies on Article 2163 of the LSA–Civil Code which provides that "The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge." Plaintiff relies on this codal article as authorization of an explicit agreement between Loup & Younger as debtor, and plaintiff, as creditor, whereby the payments made to them jointly by Farnsworth were to be credited first to discharging the loans made by plaintiff to meet Loup & Younger's payroll and secondly to payment of the material supplied by plaintiff. But in so doing, plaintiff ignores the true status of the parties herein.

By their stipulation that Farnsworth was to guarantee payment to Valley through the device of jointly payable checks, Farnsworth must be considered the debtor insofar as the rights of imputation under Article 2163 are concerned. The only reasonable

imputation by Farnsworth arising out of the agreement between it and plaintiff is the latter, as vendor, was to paid first for all of its materials furnished, before any funds were to be paid to Loup & Younger. We are supported in this reasoning by two recent cases decided in other jurisdictions: City Lumber Company v. National Surety Corp., 229 S.C. 115, 92 S.E.2d 128; and F. & C. Engineering Co., Inc., v. Moore, Tex.Civ.App., 300 S.W.2d 233.

We find further support in the testimony of plaintiff's general manager who admitted that " * * * I am going to get my materials out of the jointly payable checks" and that there were sufficient funds placed in Valley's hands by Farnsworth to pay for all of the materials it had furnished.

To traverse this defense of payment, plaintiff urges their second contention that Farnsworth had, as aforestated, breached its agreement, thereby releasing plaintiff from its obligations thereunder and allowing it to assert its lien privileges by recordation. The trial court agreed with plaintiff, finding that Farnsworth did not fully comply with Section 22(a) of the subcontract, which section obligated the general contractor to make progress payments upon approved statements within five days after receipt of payment from the owner, F. & C. Realty Co. and its assignees Gilmore Park Homes, Inc.

The unavoidable effect of this contention, if upheld, is to hold Farnsworth obligated to plaintiff for all the stipulations that the general contractor has obligated itself to Loup & Younger in the sub-contract. In other words, plaintiff would make itself a party to the sub-contract between Farnsworth and Loup & Younger. For plaintiff to assert this is to admit that the arrangement between plaintiff and Loup & Younger was a joint venture, one of the special defenses pleaded by all defendants.

We are convinced, however, that neither in legal contemplation or in the intent of the parties was the arrangement existing between Valley and Loup & Younger a joint venture. There can be no question as to the intent of the parties. All of the representatives of plaintiff and defendants Roy Loup and Bernard Younger testified that they never intended to create a joint venture, and these admissions foreclose the issue as to the parties themselves inasmuch as the intention of the parties is governing. This principle was recognized by this Court in Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341, 345, in the following statement:

"As between the parties, the general rule with reference to joint adventures or special partnerships is that the relationship arises only where the parties intended to associate themselves as such."

As to the legal effect toward third parties of the various activities carried on

by both parties under their agreement, we are equally convinced that no joint venture was created. There are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered *sui generis* and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a "joint-adventure". To satisfy the requirements by a showing that a joint profit is sought by one or more parties would be to put the "joint venture" label on almost every commercial venture requiring the cooperation of two or more parties.

■ In the instant case involving the construction industry, we are fully cognizant of the common-place practice wherein numberless suppliers of materials deal with numberless contractors and subcontractors with never a suspicion that they were entering into a special partnership or a "joint venture". The instant case does not present an exception. We recognize that dealers in materials must, for competitive reasons, service their accounts, give advice, extend credit, offer suggestions on the proper type of materials and equipment, and perform a number of helpful accommodations to secure their clientele. This is what plaintiff did in this instance, and we decline to penalize them for their business resourcefulness. This finding is not to be construed, however, that facts and circumstances may not give rise to a legal joint venture between or among suppliers and builders, as is not the case here.

Accordingly, we find that the agreement between plaintiff, Valley Supply Company, and defendants, Loup & Younger, was exclusively a buy-sell agreement with an obligation by a third party to guarantee payment. That the third party, Farnsworth & Chambers, has discharged its obligation properly by putting within the control of plaintiff sufficient funds out of which it could have been completely paid. Hence, it follows that Farnsworth & Chambers, its surety Aetna Casualty & Surety Company, and the owners and assignees of the land-lease and the improvements, F. & C. Realty Company and Gilmore Park Homes, Inc., are to be relieved of any further direct liability to plaintiff, thereby defeating plaintiff's claim for a materialman's lien and privilege.

Plaintiff has established its claim against the defendants, Roy Loup and Bernard Younger, and it is entitled to a personal judgment against said partners for the full amount of the balance due on the materials furnished by Loup & Younger, plus legal interest from date of judicial demand until paid.

Accordingly, for the reasons assigned, it is ordered, adjudged and decreed that the judgment rendered by the District Court in

favor of plaintiff, Valley Supply Company, and against the defendants, Roy L. Loup and Bernard J. Younger, doing business under the name and style of Loup & Younger, for the full amount of $19,474.33, in solido, with legal interest from date of judicial demand until paid is affirmed. In all other respects the judgment so rendered is now reversed, annulled and set aside.

■ It is further ordered, adjudged and decreed that all rights of plaintiff and defendants, Loup & Younger, to be asserted against the fund of $19,091.70 retained by Farnsworth & Chambers, Inc., are reserved to them, respectively, as against any and all claimants thereto. All costs to be borne by defendant, Loup & Younger.

Affirmed in part and reversed in part.

HAMITER, J., absent.

TATE, J., dissented in part.

TATE, Justice (concurring in part, dissenting in part).

I respectfully dissent insofar as the majority opinion both fails to recognize Valley's materialman's lien and discharges Farnsworth from any liability whatsoever to Valley.

With due respect to the able opinion of the majority, the fallacy therein is its holding that Farnsworth "discharged its obligations [to Valley] properly by putting within the control of plaintiff sufficient funds out of which it could have been completely paid." This statement is based upon the circumstance that up through April 9, 1956, checks totalling $78,857.10 (covering work performed through progress estimates dated through March 31st) were made jointly payable to Valley and Loup & Younger (hereinafter "Loup"), whereas the total sales by Valley to Loup on the contract only totalled $66,858.22.

However, Farnsworth has to this date not paid the last $19,091.70 due upon the total contract price of $97,948.70. This amount still due represents what is still owed for work performed and materials sold by Valley *after* March of 1956 (Loup's subcontract was not completed until June of 1956) and for a 10% reserve deducted from payments made jointly to Loup and Valley for materials supplied (by Valley) *and* work performed (by Loup) between the contract's inception in November and prior to March of 1956. (The last payment made by Farnsworth was by check of April 9, pursuant to the progress estimates for March, 1956.) For these amounts, which Farnsworth has not paid by joint checks to Valley and Loup and which in fact Farnsworth to this date retains, Valley has no recourse save this suit to protect itself.

Reference must be made to the terms of the agreement between Valley and Farnsworth, incorporated in full in the exchange

between them of letters of November 7 and November 28, 1955, set forth in full in the majority opinion.

Both parties admit that Valley waived its material lien for the consideration stated in Valley's letter of November 7th and specifically accepted by Farnsworth's letter of November 28th, namely, "In consideration of your [Farnsworth's] making *all* checks and payments jointly payable to Valley Supply Company and Loup & Younger *on this job."* Since Farnsworth has not made all checks and payments for the job jointly payable to Valley and Loup —that is, since instead of doing so it has retained the last $19,091.70 due for the work performed by Loup *and* for the materials furnished by Valley to Loup for use on the job—, it seems clear to me that at least to the extent of this last amount due upon the contract Valley should have a right to the usual materialman's lien if it does not have also a right to a monied judgment against Farnsworth.

I am unable to understand the reasoning which permits Farnsworth to have the benefit of Valley's waiver of the materialmen's lien per the agreement of November, 1955, when it has not furnished the agreed consideration for the waiver of making all payments upon the job jointly to Valley and Farnsworth. Valley gave up its legal right to have the price of materials furnished for the job protected by a materialman's lien in exchange for the protection

of having all payments for the job made jointly payable to both it and Loup; and although the last nineteen thousand dollars of the contract sum have not been made so payable so as to permit Valley the benefit of *this* protection, we have likewise refused Valley the protection of its material lien which—except for the waiver pursuant to the agreement—it otherwise possessed as a matter of law.

It is necessary to elaborate a little upon the method of payment under the subcontract in order to explain fully my non-concurrence in the view expressed by the majority opinion with the statement "Plaintiff [Valley] had within its complete control sufficient funds out of which the indebtedness due it for sold materials could have been paid" based upon the simple circumstance that $78,857.10 of checks were made jointly payable to Valley and Loup whereas Loup had sold materials only to the extent of $66,858.52. Succinctly, if the Farnsworth checks had been intended to cover the full liability due by Loup to Valley, I would not disagree with the majority's holding; but the evidence explicitly shows that such checks as were paid, were *not* intended to do so.

In the performance of its contract, Valley furnished materials to Loup, which latter firm *itself* in the performance of the contract furnished labor, supervision, and certain other supplies and services. Each month a progress report would be com-

pleted by Loup and furnished to Farnsworth showing the dollar value of the work performed *(including* materials furnished by Valley) during the month. On the basis of this progress report, Farnsworth (after deducting a 10% reserve) would make a check jointly payable to Valley and Loup *covering only the work performed through the date of the progress report (less* 10%). It was never contemplated that Valley would retain the entire amount of such checks due for *both* material furnished by it *and* work performed by Loup, but only that it would retain the share of the check attributable to the supplies furnished by it. Otherwise, it would have stripped Loup of operating capital by deducting from such checks for materials for which Loup was not yet paid by Farnsworth or which, in fact, had not even yet been sold to Loup.

For purposes of this dissent, it has not been necessary to reconcile the various figures contained in the 600 pages of the record and in the thick package of documentary exhibits, and I cannot pretend to have made an exhaustive analysis thereof. But I do note that through the last payments ever made by Farnsworth upon the contract which were on April 6th and 9th per progress reports submitted by Loup for work performed up through March 31st (as supplemented by an estimate dated April 7th), Farnsworth had withheld $8,-412 of monies due for work performed by Loup (including compensation for supplies furnished by Valley) *prior* to the date of Farnsworth's last payment. See Tr. 228; Exhibits P–36b, P–37, and P–39a. I further note that although the balance due as claimed by Valley amounts to $19,474.33, there are indications that the balance due Valley by Loup on the contract was $12,-820.76 as of date of receipt by Valley of sums paid jointly to Valley and Loup for work performed up through the last progress estimate for which Farnsworth ever made payment. Tr–267. If true, and I see no denial of this claim in the record, it would indicate that approximately six thousand five hundred dollars of supplies were sold by Valley to Loup for use on this contract *after* the date of the last payment made by Farnsworth. As to at least all the sums enumerated in this paragraph insofar as attributable to supplies furnished by Valley, I do not see how Valley can be prejudiced by Farnsworth's failure to make checks for such amounts payable jointly to Valley and Loup.

A circumstance to which the majority opinion under its disposition of this case found no occasion to allude is that Farnsworth stopped making payments to Loup because of an alleged breach by Loup of an obligation contained in the contract between Loup and Farnsworth. Such breach

of *this* contract to which Valley is not a party cannot excuse Farnsworth's failure to comply with *its* contract with Valley (to which Loup is not a party), and certainly cannot be used to permit Farnsworth to retain the benefit of such contract (Valley's waiver of its material lien) and yet evade its obligation thereunder (to make Valley a party to all payments due under the contract.) It may be true that Farnsworth will suffer prejudice by compliance with its contractual obligation to Valley to make all payments directly payable to both Valley and Loup, but certainly Valley should not suffer prejudice because of Farnsworth's breach of this obligation; in short, Valley should either have its lien or Farnsworth's compliance with the obligation.

In closing, I may add that if the record could be said to support the majority's conclusion that Valley diverted from payments due it for materials furnished any monies to repay itself for advances made to Loup outside of for materials furnished, such diversion (not contemplated within the contract between Valley and Farnsworth) should not be allowed to prejudice Farnsworth. But there are indications in the record that if any diversion did place as to a *part* of the funds due to Valley for materials, that they did so with the approval of Farnsworth in order to enable Loup to continue and complete the contract. Cf., e. g., Tr–416.

For the foregoing reasons, I dissent from the majority opinion insofar as it relieves Farnsworth from any liability whatsoever under, or by reason of its breach of, its contract with Valley.