Judgment rendered May 22, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,637-CA
No. 55,638-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 55,637-CA

AMANDA MARTIN
SEPULVADO AND ON
BEHALF OF MINOR CHILD,
OLIVIA SEPULVADO
                    Plaintiffs-Appellants

versus

G-ROCK CLIMBING, LLC, ET
AL
          Defendants-Appellees

No. 55,638-CA

CHAD SEPULVADO,
INDIVIDUALLY AND ON
BEHALF OF HIS MINOR
CHILD OLIVIA
JANE SEPULVADO
                    Plaintiffs-Appellants

versus

HARTFORD
UNDERWRITERS
INSURANCE
COMPANY, ET AL
          Defendants-Appellees

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 632,076 and 635,049

Honorable Ramon Lafitte, Judge

* * * * *

GREGORIO, CHAFIN, LLC
By: Scott Chafin, Jr.

Counsel for Appellant,
Amanda Martin Sepulvado,
Individually and on Behalf
of Minor Child, Olivia
Sepulvado

THE PARKS FIRM, LLC
By: Santi A. Parks

DUNAHOE LAW FIRM
By: Jared R. Dunahoe

Counsel for Appellant,
Chad Sepulvado,
Individually and on Behalf
of Minor Child, Olivia
Sepulvado

CHAD E. SEPULVADO

In Proper Person

WIENER, WEISS & MADISON
A PROFESSIONAL CORPORATION
By: Layne A. Clark, Jr.

Counsel for Appellee,
Shreveport Sports
Training, LLC d/b/a
D1 Training Shreveport

PETTIETTE, ARMAND, DUNKELMAN,
WOODLEY & CROMWELL, LLP
By: C. Cavett Feazel

Counsel for Appellee,
Red River Range, LLC

GALLOWAY, JOHNSON, TOMPKINS,
BURR, & SMITH, PLC
By: Mark R. Pharr, III

Counsel for Defendant,
G-Rock Climbing, LLC

KEOGH, COX, & WILSON, LTD
By: Martin Edward Golden

Counsel for Defendant,
Nationwide Mutual
Insurance Company

BARRASO, USDIN, KUPPERMAN,
FREEMAN, & SARVER, LLC
By: Alexandra L. Gjertson

Counsel for Defendant,
Vantapro Specialty
Insurance Company

* * * * *

Before COX, STEPHENS, and ROBINSON, JJ.

**STEPHENS, J.**

This civil appeal arises out of the First Judicial District Court, Parish of Caddo, State of Louisiana, the Honorable Ramon Lafitte, Judge, presiding. In separate (now consolidated) lawsuits, plaintiffs, Amanda Sepulvado and her former husband, Chad Sepulvado, filed suit individually and on behalf of their minor daughter, Olivia Sepulvado, for injuries that Olivia sustained on July 19, 2021, while participating in a summer camp hosted by Shreveport Sports Training, LLC d/b/a D1 Training Shreveport ("D1"), Red River Range, LLC ("Red River Range"), G-Rock Climbing, LLC ("G-Rock"), and PinPoint Events, LLC ("PinPoint") called "Summer Camp 2.0." Plaintiffs have appealed from a judgment granting motions for summary judgment in favor of Red River Range and D1. For the reasons set forth below, we reverse and remand the matter to the trial court for further proceedings.

## FACTS/PROCEDURAL HISTORY

In the Spring of 2021, the owners of D1, Red River Range, G-Rock, and PinPoint entered into an agreement to operate a youth summer camp named Summer Camp 2.0. D-1 is a sports training business, Red River Range is a shooting range, G-Rock is an indoor rock-climbing business, and PinPoint is a marketing company. D-1, Red River Range, and G-Rock are three separate businesses with facilities within walking distance of each other. PinPoint was to cover the costs of snacks, employees, marketing, and shirts; D1, Red River Range, and G-Rock were to provide at least three employees at their respective businesses to solely work with the camp participants and provide any equipment for camp activities. The cost of the camp for each child was $195. The parties agreed to divide the camp fees

equally, with D1, Red River Range, G-Rock, and PinPoint each to receive 25% of the fee paid by each camper.[1]

D1, Red River Range, G-Rock, and PinPoint then began to advertise Summer Camp 2.0 to the public and their existing customers through fliers and social media ads. According to plaintiffs, in every advertisement, D1, Red River Range, G-Rock, and PinPoint represented to the public that Summer Camp 2.0 was a partnership between the four entities putting it on. Ms. Sepulvado first learned of Summer Camp 2.0 through a Facebook advertisement touting a summer camp experience in which campers could participate in sports training at D1, rock climbing at G-Rock, and hunting, fishing, and archery at Red River Range. Plaintiffs enrolled their son Charlie and daughter Olivia in Summer Camp 2.0.

On July 19, 2021, at approximately 8:00 a.m., Ms. Sepulvado dropped her kids off at the camp. Within 15 minutes, Olivia had fallen from the top of the rock climbing wall at G-Rock, approximately 25-30 feet, sustaining serious injuries, including two fractured femurs. That morning, there were approximately 20-30 children participating in the camp at G-Rock, with only a 17-year-old high school student supervising all of them.

Plaintiffs filed suit against G-Rock, Red River Range, D1, PinPoint, and their respective insurers. In her petition, Ms. Sepulvado claimed that she and Olivia sustained personal injuries as a result of defendants' fault and alleged that Olivia's fall was the result of the negligence of defendants in:

---

[1] The plan for the camp was to have the campers divided into three groups. One group's parents would drop them off at the G-Rock facility, while the other two groups would be dropped off by parents at either Red River Range or D1. The campers would take part in the activities of the facility where they were taken first. PinPoint would then provide employees to walk the campers to each of the other two facilities, which would allow campers to participate in activities at all three businesses.

- Failure to properly supervise camp attendees;

- Failure to properly and adequately train employees;

- Failure to properly and adequately train camp attendees on use of the equipment;

- Failure to properly maintain and test equipment prior to use by camp attendees;

- Failure to implement adequate safety precautions and equipment;

- Failure to staff the summer camp with responsible individuals;

- Failure to employ a proper number of employees commensurate with the number of camp attendees;

- Failure to properly and adequately warn camp attendees, and their parents, of the dangers associated with the activities;

- Failure to follow proper instructions for use of equipment and/or climbing apparatus; and

- Other acts of negligence to be shown at trial of this matter.

In his petition, Mr. Sepulvado alleged that Olivia's fall was the result of the combined fault of the defendants, G-Rock, D-1, PinPoint, and/or Red River Range, which negligence included:

- Failure to properly supervise Olivia;

- Failure to properly and adequately train their employees;

- Failure to properly instruct Olivia on the use and operation of the rock climbing equipment;

- Failure to properly operate, maintain, and/or test the rock climbing equipment prior to Olivia's use;

- Failure to properly implement adequate safety precautions, equipment, and warnings;

- Failure to adequately staff the summer camp; and

- Failure to properly and adequately warn Olivia and her parents of the dangers associated with rock climbing.

Mr. Sepulvado further alleged that the summer camp was a joint venture between the defendants and, on this basis, the defendants were solidarily liable for the damages sustained by him and Olivia.

3

The various defendants filed answers, the two suits were consolidated, the parties engaged in discovery, and a settlement was reached between the parties and PinPoint. Thereafter, both D1 and Red River Range filed motions for summary judgment. According to D1, there was no viable negligence claim against it, and no partnership or joint venture existed between it and the other business that put on the camp. According to Red River Range, plaintiffs were unable to establish any independent negligence on its part or the existence of a joint venture between it and the other defendants. Plaintiffs opposed the motions for summary judgment, and a hearing on the motions was held. The trial court found that the four entities did not form either a partnership or a joint venture and granted both motions for summary judgment. The trial court certified the judgment as a partial final judgment, and it is from this judgment that plaintiffs have appealed.

## DISCUSSION

The principal issue in this appeal is whether G-Rock, D1, Red River Range, and PinPoint entered into a partnership or joint venture. Plaintiffs urge that the trial court erred when it granted the summary judgment motions filed by D1 and Red River Range based upon the court's finding that no partnership or joint venture existed between the four entities.

### *Applicable Legal Principles*

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Leisure Recreation & Ent., Inc. v. First Guaranty Bank*, 21-00838 (La. 3/25/22), 339 So. 3d 508; *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791.

4

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Driver Pipeline Co. v. Cadeville Gas Storage, LLC*, 49,375 (La. App. 2 Cir. 10/1/14), 150 So. 3d 492, *writ denied*, 14-2304 (La. 1/23/15), 159 So. 3d 1058. Summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by La. C.C.P. art. 969(A)(2). The procedure is favored and shall be construed to accomplish those ends. *Id.*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact, and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). If the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all the essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. La. C.C.P. art. 966(D)(1). The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

A genuine issue is a triable issue, one about which reasonable persons could disagree. *Suire v. Lafayette City-Parish Consol. Gov't*, 04-1459 (La. 4/12/05), 907 So. 2d 37; *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So. 2d 730. In determining whether a fact is genuine for purposes of summary judgment, courts cannot consider the merits, make

credibility determinations, evaluate testimony, or weigh the merits. *Suire*, *supra*. A material fact is one that potentially ensures or precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can be seen only in light of the substantive law applicable to the case. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876; *Richard v. Hall*, 03-1488 (La. 4/23/04), 874 So. 2d 131.

A joint venture results from the undertaking by two or more persons to combine their efforts, knowledge, property, or labor to engage in and carry out a single business venture for joint profit. *Dhaliwal v. Dhaliwal*, 52,507 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1188; *Riddle v. Simmons*, 589 So. 2d 89 (La. App. 2 Cir. 1991), *writ denied*, 592 So. 2d 1316 (La. 1992). The existence of what constitutes a joint venture is a question of fact, although what constitutes a joint venture is a question of law. *Grand Isle Campsites, Inc. v. Check*, 262 So. 2d 350 (La. 1972); *Cajun Electric Power Co-op, Inc. v. McNamara*, 452 So. 2d 212 (La. App. 1 Cir. 1984).

The essential elements of a joint venture and a partnership are the same, and joint ventures are generally governed by partnership law. *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 04-0211 (La. 3/18/04), 867 So. 2d 651; *Dhaliwal*, *supra*; *Riddle v. Simmons*, 40,000 (La. App. 2 Cir. 2/16/06), 922 So. 2d 1267, *writ denied*, 06-0793 (La. 6/2/06), 929 So. 2d 1259. A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their

6

efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit. La. C.C. art. 2801.

Joint ventures only arise where the parties intended the relationship to exist, and they are ultimately predicated upon contract, either express or implied. *Broadmoor*, *L.L.C.*, *supra*; *Turner v. Hoffoss*, 52,507 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1188; *Riddle*, *supra*. No formal or specific agreement is required. *Dhaliwal*, 52,507 at p. 7, 265 So. 3d at 1192; *Riddle*, 589 So. 2d at 92. Generally the relationship may be formed by an oral agreement, and the existence of a joint venture may be inferred from the conduct of the parties and other circumstances. *Id.* There are no hard and fast legal rules fixing the requisites for a joint venture; each case must be considered *sui generis*, and care must be exercised that consideration is given to the usages and practices characteristic of the particular commercial undertaking sought to be labeled a "joint venture." *Cajun Electric. Power Co-op., Inc.*, *supra*, *citing Hero & Co. v. Farnsworth & Chambers Co.*, 236 La. 306, 107 So. 2d 650 (La. 1958).

*Analysis*

**Intent to form a partnership or joint venture**

It is plaintiffs' position that, when analyzed under the prevailing test for the existence of a joint venture or partnership, the evidence in this case establishes, at a minimum, a genuine issue of material fact in dispute as to whether defendants created such an entity to form, market, and operate Summer Camp 2.0.

In support of their argument that Summer Camp 2.0 constituted a partnership or joint venture between G-Rock, D1, Red River Range, and PinPoint, plaintiffs note the following:

7

- Matt Snyder, owner of PinPoint, sent an email proposal outlining the terms and logistics of the camp, using bold font, and the outline was captioned **"Partner Breakdown and Responsibilities."**

- Each "partner" was to receive 25% of the money generated by the camp.

- The understanding was that the parties would be working together to create, promote, and operate Summer Camp 2.0.

- Marketing materials displayed by all parties at their respective places of business and on social media indicated that D1, Red River Range, G-Rock, and PinPoint were acting as "partners."

- Their internal communications explicitly used the language "partners."

- Each business would contribute its own resources—fishing, shooting, and archery from Red River Range; sports training from D1; rock climbing from G-Rock; and marketing, promotions, and logistics from PinPoint, towards a common goal—the hosting of a summer camp for mutual gain.

- Each facility offered its own sporting event for campers to participate in during the camp, using that business's equipment, and each business brought "to the table" its respective reputation and clientele, for the mutual benefit of all of the parties to the joint venture. Defendants D1 and Red River Range both benefitted by attracting new visitors to their facilities because of the camp.

- The April 5, 2021, email from Snyder expressly set forth each partner's contributions in determinate proportions. Because there were contributions by each partner of effort and resources, their contributions were in determinate proportions. Likewise, there was a joint effort to promote and host the camp.

Red River Range, D1, G-Rock, and PinPoint created "Summer Camp 2.0" by virtue of an implied contract, urge plaintiffs, as shown by Snyder's email and their behavior leading up to and throughout the camp. Plaintiffs also note a statement by G-Rock's sole employee working with the campers the day of Olivia's injury regarding her understanding of a partnership among the four entities, and one by Brad Simon of Red River Range about a report he made to his insurer regarding the incident because "it happened at a neighbor's business that [he was] doing a joint venture with." Finally, there is a statement by Polo Gonzalez of G-Rock in his deposition that Summer

8

Camp 2.0 was a partnership between D1, Red River Range, G-Rock, and PinPoint. According to plaintiffs, Gonzalez's testimony "alone" creates a genuine issue of material fact as to the existence of a partnership or joint venture, making summary judgment inappropriate.

Plaintiffs argue that the above, at a minimum, creates a genuine issue of material fact as to the existence of a joint venture or partnership between Red River Range, D1, G-Rock, and PinPoint, rendering summary judgment improper.

According to D1 and Red River Range, Summer Camp 2.0 was neither a partnership nor a joint venture undertaken by PinPoint, D1, Red River Range, and G-Rock, but a "weeklong youth event promoted by Pinpoint Events, marketed by Pinpoint Events, and conducted by Pinpoint Events."

First, there was no consent to form a partnership or joint venture. Defendants rely on parts of the affidavits of Matt Merry of D1 and Brad Simon of Red River Range, wherein both men specifically state just that— neither one, on behalf of their respective entity, consented to the formation of a partnership or joint venture with the other three businesses. D1 includes in its brief the following from Merry's affidavit:

6.

D1 did not consent to the formation of a partnership or joint venture with G-Rock, Red River Range, LLC or Pinpoint Events, LLC. It was the understanding of D1 that the camp was being conducted by Pinpoint and it was simply agreeing to provide its athletic training and sports services to Pinpoint's campers.

9.

D1 did not consent to the formation of a partnership or joint venture pertaining to Pinpoint's Summer Camp 2.0.

9

10.

D1 did not agree to become solidarily liable with Pinpoint nor any of the entities participating in Pinpoint's Summer Camp 2.0.

11.

D1 did not enter into any agreement to share in profits, expenses, or losses with any of the entities participating in Pinpoint's Summer Camp 2.0. The agreement was simply to equally split the revenue made from campers' fees from Pinpoint's Summer Camp 2.0.

12.

D1 was solely responsible for any expenses it incurred including the wages it paid its employees to properly supervise and train Pinpoint's campers while at D1's facility.

D1 notes that nowhere in his deposition does Merry mention an agreement to "partner." Instead, in response to questioning by plaintiffs' counsel during his deposition, what Merry said was that D1 agreed to "participate" in the camp.

Red River Range urges that it agreed to host camp attendees at its business during Summer Camp 2.0. It did not consent to form a partnership or joint venture with the other business defendants. Notwithstanding the use of the word "partner" in advertising materials, the word "partners" by PinPoint in an email to the other business defendants, and Brad Simon's "colloquial" reference to Summer Camp 2.0 as a "joint venture" in his deposition, Red River Range points out that Louisiana courts have recognized that such casual or "colloquial" usage does not alone result in the formation of a partnership or joint venture. *Zacher v. Harrah's New Orleans Mgmt. Co.*, 13-1237 (La. App. 4 Cir. 2/12/14), 136 So. 3d 132;

*Marine Servs., Inc. v. A-1 Indus., Inc.*, 355 So. 2d 625 (La. App. 4 Cir. 1978); *Fiesta Foods, Inc. v. Ogden*, 159 So. 2d 577 (La. App. 1 Cir. 1964).

Red River Range also disputes that Simon's report to its insurer of Olivia's fall at G-Rock in any way had a bearing on the legal requirements for formation of a legal venture. As the owner of Red River Range, it is Simon's contractual obligation to report potential claims to its insurer. Red River Range reiterates that what happened *after* Olivia's accident does not establish either control or sharing of profits and losses by the business entities *at the time of* the accident. Plaintiffs have admitted that Red River Range and the other businesses "agreed that each business was to operate independently in its usual course." Red River Range suggests that this explicitly confirms its position that it never consented to the formation of a joint venture.

**Right of control**

Next, plaintiffs assert that the requirement that each partner have some right of control over the mutual endeavor is satisfied in this case. In the April 5, 2021, email sent by Snyder to Simon, Gonzalez, and Matt Merry, he indicated that his proposal was "open for discussion" and that he would not move forward with planning until all parties "agree[d] on how [they] will proceed." Snyder further wrote that he would "talk to everyone, and make any needed adjustments" prior to creating marketing materials and logistics." According to plaintiffs, it was the obvious intention from the beginning that each business would have a say in the operation of the camp.

Also indicative of the mutual exercise of decision-making were the parties' actions following Olivia's injury. Simon, on behalf of Red River Range, suggested to the other parties, who decided together that the kids play

11

soccer instead of rock climb for the remainder of that week. In his deposition, Simon stated that the lack of information regarding Olivia's fall and its causation "dictated the decision. Had it been something that could be explained or negligence or anything that could explain it, then maybe we would have [allowed the kids to keep rock climbing], … The prudent decision was not to continue with G-Rock… Based on the [available] information at that time[.]"

None of the separate business entities had any control over the other ones participating in Summer Camp 2.0, asserts D1. Merry makes it clear in his affidavit that D1 had no control over G-Rock's business by specifying that it was not owned, operated, or controlled by D1. Merry further asserted that D1 had no control over G-Rock's employees, equipment, safety instructions, warnings, or hiring decisions. The following are from D1's "Statement of Uncontested Facts" in its motion for summary judgment.

7. All parents and guardians of Pinpoint's campers signed separate waivers for each entity.

8. The accident involving Olivia Sepulvado occurred at G-Rock. G-Rock was not owned, operated, or controlled by D1.

9. D1 did not have any employees who were responsible for the operation or control of any of the activities involved in the accident giving rise to this suit.

10. D1 did not train Pinpoint's campers on the use of G-Rock's equipment.

11. D1 did not maintain or test equipment used by Pinpoint's campers at G-Rock.

12. D1 did not implement safety precautions or safety equipment at G-Rock.

13. D1 did not make any staffing decisions concerning G-Rock.

14. D1 did not make any determinations concerning the number of employees commensurate with the number of campers needed at G-Rock.

15. D1 had no role in warning Pinpoint's campers or their parents of any alleged dangers associated with the activities in which the campers were participating at G-Rock.

16. D1 did not fail to adhere to standards and/or policies utilized in the rock-climbing and/or summer camp industries at G-Rock.

17. D1 did not participate in any way in the use of equipment and/or climbing apparatus used at G-Rock.

18. D1 provided its facility and its employees to properly train and supervise Pinpoint's campers while they were at the D1 location only.

According to D1, plaintiffs admitted and did not contest any of the above statements of fact. As such, there can be no argument that D1 exercised any control whatsoever over G-Rock. For example, that there was only one employee present with the campers at G-Rock when Olivia Sepulvado sustained her injuries was a decision made by G-Rock and its owner, Polo Gonzalez.

Plaintiffs have argued that the businesses' decision to have the campers play soccer rather than climb the rock wall after Olivia Sepulvado fell indicates that a partnership existed as it shows that each party had the right of control over G-Rock's business. D1 urges that it shows no such thing. Instead, a decision made by the business participants in the camp after an injury occurs is no indication of the control those participants have at the time the accident occurred. What the evidence presented shows is that, at the time of the accident, D1 had absolutely no control over any aspect of G-Rock.

13

Red River Range emphasizes that plaintiffs admitted to the following "Statements of Undisputed Material Facts" by Red River Range:

Statement No. 5: PinPoint, G-Rock, and Red River Range agreed that each business was to operate independently in its usual course while PinPoint's employees and volunteers would assist in transporting the children between the three businesses over the course of five days.

. . . .

Statement No. 7: G-Rock's climbing facilities involved in the accident giving rise to this suit were not owned, operated, or controlled by Red River Range.

Statement No. 8: Red River Range did not have any employees who were responsible for the operation or control of the rock climbing activities involved in the accident giving rise to this suit. Nor did Red River Range hire, train, or pay any G-Rock employee.

It is Red River Range's contention that plaintiffs' admissions that it had no control over G-Rock's climbing facilities, the thing that caused Olivia's accident and injuries, is dispositive of the control issue, and therefore warranted the trial court's dismissal of the claims against it via summary judgment.

Defendants urge that plaintiffs have failed to establish that either D-1 or Red River Range had any control over G-Rock's climbing equipment at the time of Olivia's fall, and in fact, have admitted to the contrary.

**Sharing of profits or losses**

Defendants, D1 and Red River Range, deny that the requirement of a mutual risk of losses and sharing of profits needed to establish a joint venture or partnership is present in this case. Plaintiffs take the opposite position, urging that there clearly was a mutual risk of loss among the entities that put

on Summer Camp 2.0, as the total amount of money they each would receive from the camp was based on the number of participants—fewer campers meant a risk of lost profits for each partner.

Plaintiffs assert that there is neither merit nor legal authority to support defendants' main argument, which is that they did not equally share in the profits of Summer Camp 2.0 because each of the businesses who put on the camp had varied expenses in doing so. Under D1 and Red River Range's reasoning, what was shared was the *revenue*, not the ***profits***. Thus, no joint venture or partnership. According to plaintiffs, this argument ignores La. C.C. art. 2803, which provides in part that each partner equally participates in profits, commercial benefits, and losses of the partnership, unless the partners have agreed otherwise. Partners have the freedom to agree among themselves the manner and extent of each partner's participation in the partnership, including how they will share in the profits and losses. Mutuality is not required, urge plaintiffs.

D1 asserts that in this case, each business entity was responsible for its own expenses, hiring and paying wages to its own employees, and paying for its own supplies and equipment. D1 concedes that the overall revenue of the camp was shared, but that "what may have resulted in profit for one business entity could have resulted in a loss for another depending on their expenses." As expenses were not even considered, there was no sharing of profits. What the parties did was share revenue among themselves. Because the businesses did not agree to share profits and losses, there was no partnership or joint venture.

Red River Range points out that profit (or loss) equals revenue less expenses. Revenue, which is what the defendant businesses agreed to share,

15

is a distinctly different legal and accounting term than *profit* or *loss*. For there to be a sharing of profits and losses, there must be, by definition, a sharing of the expenses of the alleged joint venture.

Red River Range argues that there was no agreement to share profits or losses. The businesses shared the revenue which came from camp participation fees. Each entity was responsible for its own expenses. Deposition testimony from each business owner established these facts— revenue was shared, but expenses were not.

Under a revenue sharing agreement, because revenue is shared, it is possible that one or more entity could profit while another (or more) could lose. This possibility is contrary to what occurs under a profit/loss sharing agreement. In such a set-up, all partners will profit or incur a loss. Red River Range contends that plaintiffs' argument regarding the ability of a partnership or joint venture to decide on an "other-than-equal" profit/loss percentage is irrelevant, since all that matters in this case is whether there was a sharing of profits or losses in the first place. There was not, asserts Red River Range. Again, without an agreement to share profits and losses, plaintiffs cannot establish the existence of a joint venture. Thus, dismissal of plaintiffs' claims against Red River Range via summary judgment was proper.

The initial burden was on defendants to establish that there is no genuine issue as to material fact, and they were entitled to judgment as a matter of law declaring that no partnership or joint venture existed between them, G-Rock, and PinPoint. Most of the evidence submitted by defendants in support of summary judgment focused on the fact that ***they did not intend or agree*** to be partners or in a joint venture with each other. The legal

16

relationship of parties is not conclusively controlled by the terms which *the parties* use to designate their relationship, especially with regard to third parties. Courts look to the totality of the evidence, not just the agreement between the parties to determine whether a partnership or joint venture was entered into. *See Cajun Elec. Power Co-op., Inc.*, *supra* at 216; *Guilbeau v. Liberty Mutual Ins. Co.*, 324 So. 2d 571 (La. App. 1 Cir. 1975).

Furthermore, the evidence submitted by defendants arguing that there was no partnership because they did not have "control" *over G-Rock's rock-climbing facilities* or that there was no sharing of *profits or losses* misses the forest for the trees. There is clearly evidence that all of the businesses took part in making decisions *regarding Summer Camp 2.0*, which was the endeavor they undertook together, and that they agreed to share equally in the revenue of the camp but each bear the expenses incurred by its respective entity in conjunction with the endeavor.

We find competing and conflicting evidence in the record that sufficiently raises an issue of material fact concerning the nature of the business relationship between PinPoint, G-Rock, D-1, and Red River Range—specifically, whether there was a joint venture or partnership. On summary judgment, all doubts must be resolved in the nonmoving party's favor. *Lanson v. XYZ Ins. Co.*, 16-0745, p. 6 (La. 5/3/17), 226 So. 3d 412, 416. The evidence submitted by the defendants, D-1 and Red River Range, was insufficient *at this juncture* to establish that they were not engaged in a joint venture or had not entered into a partnership with the other businesses when they collectively put on Summer Camp 2.0. We thus reverse the trial

17

court's judgment, and remand the matter for further proceedings in accordance with this opinion.[2]

## CONCLUSION

For the reasons set forth above, the judgment of the trial court granting the motions for summary judgment filed by defendants, Shreveport Sports Training, LLC d/b/a D1 Training Shreveport, and Red River Range, LLC, is reversed, and this matter is remanded. Costs of this appeal are assessed to defendants, Shreveport Sports Training, LLC d/b/a D1 Training Shreveport, and Red River Range, LLC.

**REVERSED; REMANDED.**

---

[2] Based upon our finding that defendants are not entitled to summary judgment, we do not reach the alternative theory of partnership by estoppel raised by plaintiffs.